(February 25, 1913.)

## LINCOLN COUNTY, Respondent, v. TWIN FALLS NORTH SIDE LAND & WATER CO., Appellant.

[130 Pac. 788.]

RECORDER'S FEES — POWER OF BOARD TO CHANGE FEES — DUTY OF RECORDER.

1.   Under the provisions of sec. 2124 of the Rev. Codes, the county recorder is allowed and it is his duty to charge and collect twenty cents per folio for every instrument, paper or notice recorded by him.

2.   Neither the board of commissioners nor the county recorder has any power or authority to enter into an agreement or contract with any person or corporation for recording any instrument, contract or other paper or document for a less price or at a less rate than that prescribed by statute, namely, twenty cents per folio.

3.   The fact that the county recorder has a blank book containing printed forms in which he records certain contracts, instruments or documents that conform to the printed forms in his record book, does not justify him in making any less or different

rate than twenty cents per folio for the recording of the same, and it is his duty to make a folio charge for every word contained in the instrument, whether the same be printed, written or type-written in such record book.

4. To record an instrument means to transcribe it, repeat it, or recite it in a book of record kept for the purpose of perpetuating the terms and recitals contained in the instrument or document so recorded.

5. The fees prescribed by the statute to be charged by the county recorder are arbitrary charges fixed by act of the legislature, and no officer has any right to change the same or depart from the terms thereof as prescribed by the legislature.

6. Where a county recorder has recorded papers and written instruments and has not collected the full amount of fees prescribed by the statute therefor, and has thereafter rendered his accounts and settled with the board of county commissioners without accounting for the uncollected portion of such fees, the county has such an interest in the unpaid fees as to enable it to prosecute an action directly against the party for whom the work was done and to recover the same.

7. Where a county recorder has recorded instruments and has not collected the full amount of the fees prescribed by statute, and the county thereafter commences an action against the person for whom such recording is done, the question as to whether the action is barred by the statute of limitations is to be determined by the provisions of sec. 4053 of the Rev. Codes, as the same is an action upon a contract, obligation or liability not founded upon an instrument in writing.

APPEAL from the District Court of the Fourth Judicial District for Lincoln County. Hon. Edward A. Walters, Judge.

Action for debt. Judgment for plaintiff. Defendant appealed. *Affirmed.*

S. H. Hays and P. B. Carter, for Appellant.

Under sec. 1917, Rev. Codes, the board of county commissioners had power to settle the dispute as to the proper amount to be paid for recording. Even where a claim has been prosecuted to judgment, it is within the power of the board to compromise and settle the same. (*Multnomah County v.*

*Title Guaranty & Trust Co.,* 46 Or. 523, 80 Pac. 409; *State v. Davis,* 11 S. D. 111, 74 Am. St. 780, 75 N. W. 897; *Caldwell v. County Commrs.,* 80 Ind. 99.)

Having settled it and the settlement having been acted on through a period of years, they cannot now repudiate their action.    (*State of Indiana v. Milk,* 11 Fed. 389; *United States v. Wallamet V. & C. M. Wagon Road Co.,* 44 Fed. 234; *Wilcox v. Perkins County,* 70 Neb. 139, 113 Am. St. 779, 97 N. W. 236.)

There was no fraud, mistake or imposition.    If there was any error, it was in regard to the application of the law governing the point in question, and was, therefore, not a mistake such as a court of equity relieves against.    (*Missouri v. Winterbottom,* 123 U. S. 215, 8 Sup. Ct. 98, 31 L. ed. 124; *Douglas County v. Bennett,* 61 Neb. 660, 85 N. W. 833; *State ex rel. v. Shipman,* 125 Mo. 436, 28 S. W. 842.)    Par. 1 of sec. 4054, Rev. Codes, bars an action of this kind after three years. (*Ada County v. Ellis,* 5 Ida. 333, 48 Pac. 1071.)

M. J. Sweeley, *Amicus Curiae.*

So far as the recording of instruments is concerned, the recorder himself is the principal, and the statute makes him, and him alone, responsible for mistakes or torts.    (Rev. Codes, 2076.)    Counties are not liable for the neglect or wrongs of a public officer.    (Dillon, Municipal Corporations, 5th ed., sec. 1640; Mechem on Public Officers, 850.)

James R. Bothwell and H. D. Heist, for Respondent.

The order of the board of county commissioners fixing a flat fee for the recording of the contracts in question was clearly illegal, without any foundation in law, and was without the jurisdiction of the board.    (*Gorman v. Board,* 1 Ida. 553; *Conger v. Board,* 5 Ida. 347, 48 Pac. 1064; *Fremont County v. Brandon,* 6 Ida. 482, 56 Pac. 264; *Howell v. Board,* 6 Ida. 154, 53 Pac. 542; *McNutt v. Lemhi County,* 12 Ida. 63, 84 Pac. 1054.)

A county board of commissioners, being created for special purposes, can exercise only such powers as are conferred upon it by the constitution or the statutes of the state. (11 Cyc. 590; *Miller v. Smith,* 7 Ida. 204, 61 Pac. 824.)

The county is the real party to whom the fees belong. (*Elmore County v. Alturas County,* 4 Ida. 145, 95 Am. St. 53, 37 Pac. 349; *Ada County v. Gess,* 4 Ida. 611, 43 Pac. 71; *Fremont County v. Brandon,* 6 Ida. 482, 56 Pac. 264; *Bannock County v. Bell,* 8 Ida. 1, 101 Am. St. 140, 65 Pac. 710; *Shoshone County v. Thompson,* 11 Ida. 130, 81 Pac. 73; *Bingham County v. Fidelity etc. Co.,* 13 Ida. 34, 88 Pac. 829.)

The fees received by an officer for which he must account to the county include fees earned though not collected by the officer. (*Naylor v. Vermont etc. Co.,* 6 Ida. 251, 55 Pac. 297.)

"An action by a county to recover from the clerk fees illegally collected is only barred after four years." (*Bannock County v. Bell,* 8 Ida. 1, 101 Am. St. 140, 65 Pac. 710.)

AILSHIE, C. J.—This action was brought by the county of Lincoln against appellant for the purpose of recovering the sum of $9,336.35, together with interest thereon, alleged to be due as a balance for fees for recording certain instruments designated as water contracts. The case was heard on a stipulation of facts and judgment entered in favor of the county and against appellant.

The appellant is a corporation organized under the laws of the state of Delaware, and has complied with the laws of this state and is doing business in this state as an irrigation company. It is admitted that the county recorder recorded instruments for appellant, as alleged in the complaint, and that the balance due for fees, if charged at the rate of twenty cents per folio, as prescribed by the statute, for both the written and printed words thereon, would amount to the sum claimed, namely, $9,336.35. The appellant sought to defend and avoid liability upon the following grounds: That the appellant was engaged in the construction of what is known as a Carey Act project in Lincoln county in this state, and that after completing full negotiations with the state board

of land commissioners, the company entered into negotiations with the board of commissioners of Lincoln county and proposed that the company would furnish printed record books to the county free, and that the county recorder should in turn charge appellant a flat rate of seventy-five cents per instrument recorded; that the county commissioners favored the proposition submitted to the county and consented to the recorder's making such an arrangement, and that the county recorder accordingly entered into the agreement, and the company supplied the recorder with necessary blank books, containing printed pages corresponding with the printed forms of water right contracts the company had prepared for its use, and that all that was left for the recorder to do was to fill in the written part which the company might write into the blank form of its contracts. It also appears that the sum of seventy-five cents per instrument was ample and sufficient to pay the regular folio charge for the number of words which were actually written into these instruments as printed in the record book furnished by the company and which it was necessary for the recorder or his clerks to transcribe into the record books.

This state of facts presents the question as to whether the county officers could fix upon a different rate, or charge any less fee for recording an instrument than that prescribed by statute. Sec. 2124 of the Rev. Codes, which contains the schedule of fees to be charged and collected by the county recorder, provides, *inter alia*, as follows: "The county auditor and recorder is allowed, and may receive for his services, the following fees, to be paid him by the party procuring his services as recorder: . . . . for recording every instrument, paper or notice, for each folio, twenty cents; . . . ." Sec. 7 of art. 18 of the constitution (sixth amendment to the state constitution) provides that all county officers shall receive fixed annual salaries, and that all fees received by such officers over and above their actual and necessary expenses allowed by law, shall be turned into the county treasury.

The only question to be determined on this appeal is one of law. It was the duty of the county recorder to duly record

the contracts and instruments which he did record, designated
as water contracts.    Whether the record was written with a
pen, a typewriter, or printed, made no difference so long as
it was a true and correct copy and record of the instrument
presented.    To record an instrument means to transcribe it,
repeat it, or recite it in a book of record kept for the pur-
pose of perpetuating the terms and recitals contained in the
instrument or document so recorded.    (Anderson's Law Dic-
tionary; *Montgomery Beer-Bottling Works v. Gaston,* 126 Ala.
425, 85 Am. St. 42, 28 So. 497, 51 L. R. A. 396; *Cady v.
Purser,* 131 Cal. 552, 82 Am. St. 391, 63 Pac. 844; 34 Cyc.
585.)    Whether the recorder had a printed copy of the
greater portion of the instrument in his record book and filled
in the written portion or transcribed the whole document is
immaterial, for the reason that it was necessary for him to
verify the same and satisfy himself that his record was a
true and literal copy of the instrument presented for record,
and he must verify the same and satisfy himself before he
can so certify.

The fee of twenty cents per folio is an arbitrary fee estab-
lished by the legislature.    In most cases it more than pays
for the service performed, and the county makes a profit out
of the business.    In other cases, it might not pay for the ser-
vice performed.    If a county only had a very small amount
of recording to do and still had to employ a clerk or deputy
at a regular salary to do such work, the fees collected for
recording might not be sufficient to pay for the service and
the county might lose.    Upon the other hand, where there is
a great deal of this work to do, the county can hire clerks
for a great deal less than twenty cents per folio and thereby
make a profit out of the business.    Indeed, the auditor might
procure record books containing printed forms of deeds, mort-
gages and other instruments, and he might likewise procure
blank deeds and mortgages and other instruments printed to
conform to his record books, and supply these blanks to the
people generally doing business with his office, and thereby
save a large amount of the work of his office in transcribing
or recording such instruments.    No one could complain of

such a course.   On the other hand, the person presenting such an instrument for record would be obliged to pay the full folio charge for recording the instrument, and it would be no injury or damage to him that the recorder already had a printed record book which saved him the larger part of the work of transcribing the instrument.   Suppose, on the other hand, people doing business with the office were allowed to get record books printed and furnish them to the recorder, as was done in this case, and then pay fees for transcribing only the written part of their conveyances, such a practice would prove demoralizing to the business of the recorder's office. If one man or one corporation has the right to do this, every other individual or corporation has the like right.   This practice would result in every real estate firm in the county getting up a record book of its own and a blank form of deed, mortgage, or other conveyance, to correspond with the record, and every firm would have its own record book.   The mere statement of this proposition is sufficient to show that it is contrary to law and could not be allowed or tolerated.

It has been argued, however, that the county commissioners considered this proposition, and approved the same and entered into an agreement, and that the county is thereby estopped from attempting now to collect a greater sum than that agreed upon.   This contention cannot be sustained, for the reason that neither a county officer nor anyone else has a right to set aside or ignore a statute or to change the fees prescribed by a statute that shall be charged for any given public service.   The statute is plain, and both the commissioners and the irrigation company had full notice of its provisions.   Any contract which ran counter to the statute was clearly void.   Neither can the fact that the commissioners subsequently accepted and approved the recorder's report and settled with him upon the basis of the former agreement entered into with the water company avail the company here or relieve it from payment of the balance due on account of the recording of such instruments.   (*McNutt v. Lemhi County,* 12 Ida. 63, 84 Pac. 1054.)   The fact that the board of commissioners have certain powers with reference to the

settlement of claims against the county and compromising and adjusting accounts does not extend to the changing of fees and salaries fixed by statute.

A brief has been filed in this case by M. J. Sweeley, an attorney of this court, as *amicus curiae,* in which it is suggested that the county cannot maintain this action, that such fees must be paid to and collected by the county recorder, and that the county can only look to the officer and his bondsmen for the same. We have no doubt but that the county recorder could have maintained his action for the recovery of these fees. We are equally well satisfied, on the other hand, that the county itself has such an interest in these fees as to be able to maintain its action for the recovery of the same, and this is especially true where, in a case like this, the county has already settled with the county recorder, and he has presumably already retained out of fees in his hands his actual expenses as authorized by the constitution. After settlement has been made with the recorder, he may have no further interest in the fees, unless the county charges them up against him. On the other hand, the county is directly interested. It may pursue the officer and his bondsmen, or it may pursue directly the party who had the service performed.

Finally, it is argued that a part of this claim is barred by the provisions of subd. 1, sec. 4054, Rev. Codes. That statute provides, "An action upon a liability created by statute, other than a penalty or forfeiture," shall be commenced within three years after the cause of action accrued. We cannot agree that this is the kind of an action contemplated by subd. 1, sec. 4054. This cause of action was not created by statute. On the contrary, we think it is governed by the provisions of sec. 4053, which provides that, "An action upon a contract, obligation, or liability not founded upon an instrument of writing," shall be commenced within four years from the accrual thereof. This is clearly an action upon contract. It will be necessary, therefore, to remand the cause, with direction to the trial court to eliminate all items where the service was performed more than four years prior to the date of the

commencement of this action and to enter a judgment accordingly.

The contention made by respondent that this is an open and current account within the purview and meaning of section 4058, and that the statute only runs from the date of the last item appearing in the account, is not sound and cannot be sustained. Neither the recorder nor the county had any right to extend credit to the appellant, and there were no "reciprocal demands" in this case within the purview and meaning of sec. 4058. It appears that the irrigation company furnished the blank forms of record books used by the county in recording these instruments, and it should now be allowed a credit in an amount equal to the sum it would have cost the county to get these or similar records.

We find no error in the record except as to the amount of the judgment entered. The judgment will therefore be affirmed except as to the amount thereof, and the cause is hereby remanded, with direction to the trial court to ascertain the amount to be credited on account of the books furnished and the amount barred by the statute of limitations, and to enter an amended judgment for such an amount as he finds has accrued within four years immediately preceding the filing of the complaint, less the proper credit for record books as herein suggested. Costs of this appeal will be divided equally between appellant and respondent.

Stewart, J., concurs.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by my associates. Under the facts of this case the judgment ought to be reversed. The appellant is a corporation, and was engaged in the construction of what is known as a Carey Act reclamation project in Lincoln county, embracing about 250,000 acres of land, and the estimated cost of the reclamation works and system is $5,700,000. I will not go into detail here as to the operations of this company in making contracts for the sale of water rights. It is sufficient to say that the disposal of the water rights held by the com-

pany would require several thousand instruments which would contain about 200 folios each, and under the stipulated facts in this case each instrument did not contain more than three folios of written matter, on an average, printed forms being used. Many of the purchasers who held more than forty acres of land desired a water contract for each forty acre tract for their own convenience in the future transfer of their lands and water rights, and the company was willing to execute the number of contracts that each land owner might desire, provided he would pay the recording fee for all of the contracts except one. In order to make the recording fee as light as possible upon the purchasers, the appellant company took the matter up with the board of county commissioners of Lincoln county, and after thoroughly investigating the same, the board made the following order:

"Shoshone, Idaho, April 30, 1907.

"The Board of Commissioners of Lincoln County, State of Idaho, met in regular adjourned session this 30th day of April, 1907, pursuant to adjournment.

"Present: I. H. Imes, Chairman; F. E. Grosse, Commissioner, and Harry W. Anderson, Clerk.

"Upon the application of the Twin Falls North Side Land & Water Company requesting the Board to establish a flat fee for the recording of all water contracts between the Twin Falls North Side Land & Water Company and the settlers, it was ordered by the Board, after due investigation, that the Recorder charge said Company a fee of seventy-five cents for recording all regular contracts for land and water and a fee of one dollar for recording all land and water contracts accompanied by the Railroad contract, upon condition that said Twin Falls North Side Land and Water Company shall furnish to the county free of cost, all necessary books for the recording of said contracts, with the regular form of the contracts printed therein, and all necessary indexes for same. All records so furnished to be approved by the County Recorder.

"No further business appearing at this time, the board adjourned the regular meeting until Monday, the 13th day of May."

No appeal was taken from said action of the board. Thereupon the appellant company furnished to the county, free of cost, all necessary books for the recording of said contracts, with regular form of contracts printed therein, and all necessary indexes for the same, which records so furnished were approved by the county recorder.

It is contended by counsel for appellant, and we think correctly, that no charge can lawfully be made by a county recorder for recording an instrument where a printed record is used, except for recording the words which are actually written; in other words, that no one can be required to pay a constructive fee instead of a fee for the actual services rendered.

The recording fee is fixed as follows by sec. 2124, Rev. Codes: "For recording every instrument, paper or notice, for each folio, twenty cents," and a "folio" is defined by sec. 2132 to mean 100 words, counting every three figures necessarily used as a word. "Recording means the writing down or copying of the document in the proper book by the recorder." (*Cady v. Purser*, 131 Cal. 552, 82 Am. St. 391, 63 Pac. 844; *Vidor v. Rawlins*, 93 Tex. 259, 54 S. W. 1026.) In Anderson's Law Dictionary the term "recording" is defined as "Copying an instrument into the public records in a book kept for that purpose, by or under the superintendence of the officer appointed therefor."

Sec. 2062, Rev. Codes, relating to the duties of the recorder, is as follows: "He must, upon the payment of his fees for the same, record separately, in large and well-bound separate books, in a fair hand: 1. Deeds, grants," etc. When that statute was enacted, it was expected that the instrument would be written "in a fair hand" in the proper record book. At the time of the original enactment of that statute no printed record books were in use, and the law contemplated a fee of twenty cents per folio for all of such instruments as were required to be written "in a fair hand."

Sec. 2124, Rev. Codes, in speaking of the recorder's fee, provides: "The county recorder and auditor is allowed, and may receive for his services, the following fees," etc. It will be observed from said provisions of the statute that it was contemplated that twenty cents per folio would be paid for the service of recording the instrument in long-hand. Now, where the record is printed, as it was in the case at bar, and furnished by the appellant, without expense to the county, the recorder performs only the service of properly filling the blanks in the record, and he is entitled to receive payment for whatever he writes at the rate per folio specified by the statute, and as appears from the record that fee has been fully paid, the judgment should be reversed.

And again: I think the county is estopped from maintaining this action, for the reason that no appeal was taken from said order of the board, and the appellant is now placed in a position where it cannot recover the recording fee for the contracts given the settler at his request for each forty acre tract, as appellant would no doubt have required those who wanted more than one contract to pay for the recording of all others given them. In the case at bar, where only one contract was made to the settler, the fee was paid by the appellant; where more than one contract was given, as frequently happened, the additional recording fee of one dollar was collected from the settler because the additional contracts were made for his particular benefit.

This method of computing the fee which was agreed to by the county commissioners continued for some years—from April 30, 1907, until this suit was brought in 1911—and by the action of the board it is now too late for the appellant to go back and collect from the settlers the amount of the recording fee which they should have paid in case they were required to pay twenty cents per folio for all printed matter for each contract after the first. Having agreed to the method of computation provided by said order of the board, and no appeal having been taken therefrom, and regular settlements having been made by the county recorder with the county, and no appeal having been taken from those settlements, it would

be most unjust and inequitable to compel the appellant now to pay the amount of the judgment rendered against it.

Under the provisions of sec. 1917, Rev. Codes, the county commissioners have power to supervise the official conduct of all the county officers charged with the custody of the public revenues and see that they faithfully perform their duties; to examine and audit their accounts and generally to do and perform all other acts and things which may be necessary to the full discharge of their duties. Under the authority given by the statute, we think the county commissioners had power to settle the amount of the fee to be charged for recording said instruments. While, perhaps, they could not provide a less fee than twenty cents per folio for the services rendered in writing down whatever there was to be written in said printed contracts, it was within their power and authority to make the order above quoted.

In this case there was a claim honestly made, which claim was fairly and honestly considered by the board, and the board finally adopted said resolution and order. Had the board refused to adopt said order, the appellant would no doubt have made changes in its business method, and could and would have reduced the recording fee, which has already been paid, and required the settler to pay the recording fee for each contract except the first. But the company was anxious to favor the settler and give him as many contracts as he desired and make the recording fee as light as possible. Where more than one contract was to be recorded, appellant collected only the fee of one dollar from the settler for each additional contract, instead of the fee of four dollars now claimed by the county. The four dollar fee which is charged in this suit amounts to a charge of ten cents per acre against each forty acre subdivision, which would be at least four times the value of the services rendered by the recorder for recording each instrument.

Any person deeming himself aggrieved by said order of the board might have taken an appeal. And again, he might also have taken an appeal from the order of the board settling the

quarterly accounts of the recorder. But no such appeals were taken. The remedy by appeal was complete and adequate.

There was a dispute between the county recorder and the appellant, and it was within the power of the board to settle that dispute, and it did settle it, and the settlement having been accepted and acted upon for several years, the county ought not now to be permitted to repudiate the board's action.

Good faith and fair dealing should characterize the conduct of county boards in their dealings with individuals and corporations, and there is no reason in morals or law that will exempt them from the doctrine of estoppel. (*State of Indiana v. Milk*, 11 Fed. 389, 11 Biss. 197; *United States v. Wallamet Val. & C. M. W. R. Co.*, 44 Fed. 234.)

The statement in the majority opinion that if this company were permitted to furnish its own records, each real estate agent ought to be permitted to furnish his, seems ridiculous to me, as such agents sell lands for others and do not pay for recording deeds. There is no parallel or comparison between the case suggested and the one at bar. Here was a reclamation company, which it was known would execute several thousand contracts, which contracts would fill a number of volumes of records, which records, if furnished by the county, would cost it no doubt several hundred dollars, and because of the number of such contracts and the extent of such records, it seems to me it was better for all concerned to have those contracts in records especially provided for their recordation, without expense to the county, and have uniform records of all such contracts.

In accordance with said resolution of the board, said fees were duly paid and received into the county treasury. The accounts of the recorder were regularly settled in accordance with the law. The money being received under said facts and circumstances and the account being settled, the transaction amounted to a final receipt closing said transaction. As bearing on this question, see *Wilcox v. Perkins County*, 70 Neb. 139, 113 Am. St. 779, 97 N. W. 236. It was held in *Douglas County v. Bennett*, 61 Neb. 660, 85 N. W. 833, that where a full and complete settlement of a county officer with the

county commissioners, who are authorized to make the same, has been made, such settlement is final and conclusive, unless there is fraud, mistake or imposition in making the same, and we think that is true in this state where no appeal is taken from the action of the board in settling such accounts. There is no charge of fraud, mistake or imposition in this case. Said order was passed by the board on April 30, 1907, and this action was not brought until August 25, 1911.

The judgment ought to be reversed.