# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35144

RANDOLPH E. FARBER, SCOTT ALAN
BECKER and CRITTER CLINIC, an Idaho
professional association,

    Plaintiffs-Appellants,

v.

THE IDAHO STATE INSURANCE FUND,
JAMES M. ALCORN, its manager, and
WILLIAM DEAL, WAYNE MEYER,
MARGUERITE MC LAUGHLIN, GERALD
GEDDES, MILFORD TERRELL, JUDI
DANIELSON, JOHN GOEDDE, ELAINE
MARTIN, and MARK SNODGRASS in their
capacity as members of the Board of
Directors of the STATE INSURANCE FUND,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2009 Term

2009 Opinion No. 66

Filed: May 5, 2009

Stephen W. Kenyon, Clerk

SUBSTITUTE OPINION.
THE COURT'S PRIOR
OPINION DATED MARCH 5,
2009, IS HEREBY
WITHDRAWN

---

Appeal from the District Court of the Third Judicial District of the State of Idaho,
Canyon County. The Honorable Thomas J. Ryan, District Judge.

The summary judgment is <u>reversed</u> and the case is <u>remanded</u>.

Lojek Law Offices, Chtd., and Gordon Law Offices, Boise, for appellants.
Donald J. Lojek and Bruce S. Bistline argued.

Hall, Farley, Oberrecht & Blanton, P.A., Boise, for respondents. Richard E. Hall
and Keely E. Duke argued.

---

J. JONES, Justice

    This class action lawsuit arises out of a decision by the Idaho State Insurance Fund (the
Fund) to distribute dividends pursuant to I.C. § 72-915 only to those policyholders who paid
more than $2,500.00 in premiums. The Plaintiffs – those policyholders whose annual premiums

1

were $2,500.00 or less – sued the Fund, its Manager, and its Board of Directors[1] for damages and injunctive relief. Both parties moved for partial summary judgment regarding the interpretation of I.C. § 72-915. The district court denied the Plaintiffs' motion and granted the Fund's motion. We reverse and remand.

## I.

The Fund was created in 1917 to provide worker's compensation insurance to Idaho employers, particularly those employers who could not otherwise obtain insurance from private carriers. *See* I.C. § 72-901. The Board of Directors sets the Fund's policies while the Manager conducts the Fund's day-to-day operations. I.C. §§ 72-901 & 902. Since the Fund's inception, the Manager has, on occasion, distributed a dividend to policyholders pursuant to I.C. § 72-915. This dividend is different from the dividend issued to stockholders of a corporation and is instead a refund based upon a rate readjustment. From at least 1982 until 2003, whenever the Manager decided to distribute a dividend it was distributed to all policyholders who had paid premiums for at least six months prior to the distribution.[2] The amount of dividend each policyholder received was determined based on the premium amount the policyholder paid. Beginning in 2003, however, the Manager decided to calculate the dividend by splitting the entire surplus between those few policyholders who paid more than $2,500.00 in annual premiums to the Fund.[3] This practice continued during the following years' distributions as well.

The Plaintiffs of this class action lawsuit are those Idaho employers who paid annual premiums of $2,500.00 or less to the Fund for worker's compensation insurance from the policy year beginning in 2001 onward. These class members comprise the majority of the Fund's policyholders.[4] Both parties moved for partial summary judgment regarding the proper interpretation of I.C. § 72-915. The Fund argued that the statute does not require the Manager to distribute dividends according to a set formula, but rather allows the Manager to exercise his discretion in determining how to distribute dividends amongst policyholders. The Plaintiffs conceded that the statute grants the Manager discretion in making the decision as to *whether* to

---

[1] This opinion will refer to the defendants collectively as "the Fund."
[2] The Manager stated in an affidavit that large policyholders were paid a larger percentage dividend than small policyholders, based in part on the fact that "certain costs associated with writing a policy are essentially the same whether it be for $2,000 or $200,000 policy."
[3] The dividend distributed in 2003 was for the policy year beginning in 2001.
[4] The parties estimate that the class may be as large as 30,000 members and comprises at least seventy-five percent of all the Fund's policyholders.

distribute dividends, but argued that the statute prescribes *how* to distribute dividends once the Manager decides to make a distribution. The district court denied the Plaintiffs' motion for summary judgment, and instead granted the Fund's motion for partial summary judgment. It then certified the judgment for appeal pursuant to Idaho Rule of Civil Procedure 54(b).

The Plaintiffs appealed to this Court, reiterating their argument that the statute grants the Manager no discretion regarding how to distribute dividends amongst policyholders.

## II.

### A.      Standard of Review

When reviewing an order for summary judgment, the standard of review for this Court is the same standard used by the district court in ruling on the motion. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). The Court exercises free review over the entire record that was before the district judge to determine whether either side was entitled to summary judgment. *Id.* Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho R. Civ. P. 56(c).

In order to resolve this appeal we must engage in statutory interpretation, which is an issue of law over which this Court exercises free review. *In re Daniel W.*, 145 Idaho 677, 679, 183 P.3d 765, 767 (2008). The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley County*, 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). Statutory interpretation begins with the literal language of the statute. *Paolini v. Albertson's, Inc.*, 143 Idaho 547, 549, 149 P.3d 822, 824 (2006). Provisions should not be read in isolation, but must be interpreted in the context of the entire document. *Westerburg v. Andrus*, 114 Idaho 401, 403, 757 P.2d 664, 666 (1988). The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. *Id.* It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. *AmeriTel Inns, Inc. v. Pocatello-Chubbuck Auditorium Dist.*, 146 Idaho 202, 204, 192 P.3d 1026, 1028 (2008). When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction. *Payette River*, 132 Idaho at 557, 976 P.2d at 483. Therefore, the plain meaning of

3

a statute will prevail unless it leads to absurd results. *Driver v. SI Corp.*, 139 Idaho 423, 427, 80 P.3d 1024, 1028 (2003).

A statute is ambiguous when the language is capable of more than one reasonable interpretation. *Porter v. Bd. of Trustees*, 141 Idaho 11, 14, 105 P.3d 671, 674 (2004). However, a statute may not be deemed ambiguous merely because parties present differing interpretations to the court. *Id.*

## B. The Statute Unambiguously Requires the Manager to Distribute the Dividend According to the Formula Provided Therein

The Fund argues that I.C. § 72-915 is ambiguous and, when read together with other statutes and laws, the affidavit of the Manager, and holdings from sister states, it grants the Manager the discretion to distribute dividends however he sees fit. The Plaintiffs, on the other hand, argue that the statute unambiguously requires the Manager to distribute the dividend monies proportionately according to the amount of premium paid by each policyholder who meets the six-month longevity requirement and who falls within the classes of employment sharing in the dividends.

The statute in question reads:

> DIVIDENDS. At the end of every year, and at such other times as the manager in his discretion may determine, a readjustment of the rate shall be made for each of the several classes of employments or industries. If at any time there is an aggregate balance remaining to the credit of any class of employment or industry which the manager deems may be safely and properly divided, he may in his discretion, credit to each individual member of such class who shall have been a subscriber to the state insurance fund for a period of six (6) months or more, prior to the time of such readjustment, such proportion of such balance as he is properly entitled to, having regard to his prior paid premiums since the last readjustment of rates.

I.C. § 72-915.

### 1. The District Court Erred in Finding the Statute Ambiguous

The district court found that the statute was ambiguous because, in the court's view, the statute could reasonably be interpreted three ways. In addition to the interpretation advanced by the Plaintiffs, the district court posited two alternate interpretations. First, the district court stated that the statute could be interpreted to mean that the Manager could distribute dividends only to the larger policyholders because they are the only ones "properly entitled" to receive a dividend. However, a careful reading of the statute does not support this conclusion. The statute

4

reads "[the Manager] may in his discretion, credit to *each individual member* [a dividend]." I.C. § 72-915 (emphasis added). This language indicates that all members who meet the longevity requirement are entitled to receive a dividend. The district court's emphasis on the language "properly entitled" is misplaced, as that language relates to the requirement that the dividend be distributed pro rata "having regard to [the policyholder's] prior paid premiums." *See id.*

Second, the district court asserted that the statute could be interpreted to mean that each policyholder is entitled to a dividend, but that the dividend need not "be in direct proportion to the amount of premium the [policyholder] paid relative to the whole." Again, this interpretation is not supported by the plain language of the statute. Should a dividend be declared, the statute provides that each policyholder who has been a subscriber for at least six months prior shall be credited "such proportion of such balance as he is properly entitled to, having regard to his prior paid premiums." I.C. § 72-915. The inclusion of the words "proportion" of the balance, and "having regard to" the policyholder's "prior paid premiums" can only mean that the distribution of dividends must be done on a pro rata basis. *Id.* The language is not ambiguous as to this requirement, and the district court erred in finding it ambiguous on these grounds.

Instead, the plain language of I.C. § 72-915 demonstrates that the statute grants the Manager discretion to distribute a dividend when "there is an aggregate balance remaining to the credit of any class of employment or industry" and the Manager deems that the aggregate balance "may be safely and properly divided." The Manager's discretion is therefore limited to the decision of whether or not to distribute a dividend in the first place. The remainder of the sentence sets forth the method by which dividends are to be distributed, requiring the Manager to "credit to each individual member of such class" who has been a policyholder for at least six months "such proportion of such balance as he is properly entitled to, having regard to his prior paid premiums since the last readjustment of rates." *Id.* The phrase "any class of employment or industry," when read with other statutes related to worker's compensation insurance, refers to the class to which each policyholder belongs for purposes of determining the rate paid for worker's compensation coverage.[5] The statute contemplates dividing the aggregate balance

---

[5] The district court erroneously held that the word "or" rendered the phrase ambiguous. Originally the Manager divided different employments into classes and, after taking into consideration the hazards of the different classes, fixed the premium rates for each class. *See* I.C. § 72-913. However, in 1961, the Legislature set up a system in which every insurer that writes worker's compensation insurance in Idaho, including the Fund, must be a member of a ratings organization. I.C. § 41-1615. The ratings organization then establishes classes of employment or industry

5

*proportionately* according to the policyholder's *prior paid premiums* relative to all paid premiums. To argue that this language could be construed to somehow grant discretion regarding how to calculate the distribution makes no sense, and would require this Court to stretch the plain language beyond its obvious meaning. Finally, in 2002 the Idaho Legislature passed House Bill No. 511, an appropriations bill, which casts further doubt on the Fund's proposed interpretation of I.C. § 72-915. H.R. 511, 56th Leg., 2d Reg. Sess. (Idaho 2002). The bill provided that the Fund would distribute a specified amount to state agencies as policyholders, and that "[t]he balance of the dividends shall be credited to each individual agency proportionally in accordance with Section 72-915, Idaho Code." *Id.* This language demonstrates that in 2002, the Legislature viewed section 72-915 as requiring a pro rata distribution of dividends.

### 2. The Fund's Argument for Interpreting the Statute is Unpersuasive

In addition to relying on the district court's reasoning, as discussed above, the Fund argues that reading I.C. § 72-915 together with I.C. § 72-902 makes clear that the Manager has the discretion to determine how to distribute the dividend. Section 72-902 reads:

> The board of directors . . . shall appoint a manager of [the Fund], whose duties, subject to the direction and supervision of the board, shall be to conduct the business of [the Fund], and do any and all things which are necessary and convenient in the administration thereof, or in connection with the insurance business to be carried on under the provisions of this chapter.

I.C. § 72-902. The Fund argues that the Manager's power to "do any and all things which are necessary and convenient" includes the discretion to determine how to distribute a dividend. The Fund also argues that I.C. § 72-901(3) provides that the Board has a duty "to direct the policies and operation of the [Fund] to assure that the [Fund is] run as an efficient insurance company, remains actuarially sound and maintains the public purposes for which the [Fund] was created." However, sections 72-901(3) and 902 are general statutes, while section 72-915 is a specific

_____

and fixes rates. I.C. § 41-1620. The effect of the later-enacted statute is that "[t]he powers granted to the [Manager of the Fund] under sections 72-903 and 72-913 . . . shall be subject to the provisions of this chapter." I.C. § 41-1618(1). Therefore, the Manager no longer has unfettered power to determine rates. *See Id.* The ratings organization establishes different classes to which each policyholder is assigned to determine the rate for purchasing worker's compensation insurance. To illustrate the class system used by the current ratings organization, the following are examples of classes: "landscape gardening and drivers," "fruit packing," "printing," "bookbinding," "hotel: restaurant employees," and other classes that define specific classes of employment or industry. *See* Idaho State Insurance Fund, Rates, http://www.idahosif.org/Rates/rates.aspx (last visited March 3, 2009). Because there is no other possible meaning of the phrase "class of employment or industry" it is unambiguous.

statute. Therefore, the more specific statute controls. *See Shay v. Cesler*, 132 Idaho 585, 588, 977 P.2d 199, 202 (1999). As discussed above, section 72-915 sets forth a specific method for determining how the manager is to distribute dividends.

Because the statute is unambiguous, there is no need to consider the plethora of evidence and testimony provided by the Fund to support its argument that the Manager acted reasonably in choosing to distribute a dividend only to those policyholders who paid more than $2,500.00 in annual premiums. The arguments, evidence, and testimony provided to this Court would be better targeted at the Legislature, which is empowered to change existing law. No matter the number and persuasiveness of the Fund's arguments, this Court's role is to interpret the law, which in this case was unambiguously established in 1917. *See In re Permit No. 36-7200*, 121 Idaho 819, 824, 828 P.2d 848, 853 (1992) (stating that "[t]he wisdom, justice, policy, or expediency of a statute are questions for the Legislature alone") (citing *Berry v. Koehler*, 84 Idaho 170, 177, 369 P.2d 1010, 1013 (1962)). If, in the intervening time, it has become prudent to alter the statutory language related to the requirements for distribution of dividends, the proper remedy is to approach the Legislature to change the law.

## C.    The Fund's Interpretation of the Statute is not Entitled to Deference

The Fund argues, in the alternative, that even if the district court's reasons for granting it summary judgment are determined to be incorrect, this Court should affirm the judgment based on the principle of agency deference. An agency's interpretation of its enabling statutes is entitled to deference if a four-pronged test is satisfied. *Pearl v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 137 Idaho 107, 113, 44 P.3d 1162, 1168 (2002); *J.R. Simplot Co. v. Idaho State Tax Comm'n*, 120 Idaho 849, 857-59, 820 P.2d 1206, 1214-16 (1991). First, the agency must have been entrusted with the responsibility to administer the statute at issue. *Id.* Second, the agency's statutory construction must be reasonable. *Id.* Third, the court must determine that the statutory language at issue does not treat the precise issue. *Id.* Fourth, the court must ask whether any of the rationales underlying the rule of deference are present.[6] *Id.* If the test is met,

---

[6] The rationales include: (1) public groups' reliance on the agency's interpretation over a period of time; (2) the agency's interpretation represents a "practical" interpretation of the statute; (3) the Legislature is charged with knowledge of how its statutes are interpreted, and thus when it does not alter the statute, it presumably sanctions the agency's interpretation; (4) the agency's interpretation is entitled to additional weight when it is formulated contemporaneously with the passage of the statute at issue; and (5) courts should recognize and defer to the agency's expertise. *J.R. Simplot Co.*, 120 Idaho at 857-59, 820 P.2d at 1214-16.

the court must give "considerable weight" to the agency's interpretation. *Id.* Without considering the first and fourth prongs, we hold that the second and third prongs are not met, and therefore no agency deference is warranted.

The Fund argues that the second prong is met because its Manager testified that the Fund's practice conformed to industry practice and was consistent with the goal of running the Fund as an efficient insurance business. The Fund further asserts its position is similar to those held by sister states, which is evidence of its reasonableness. *See Cantry v. Idaho State Tax Comm'n*, 138 Idaho 178, 59 P.3d 983 (2002). However, the sister states that the Fund emphasizes do not have statutes that are comparable to Idaho's statute. Montana specifically allows the board of its state insurance fund to "set a minimum [premium] amount below which a dividend shall not be payable to an individual policyholder." MONT. ADMIN. R. 2.55.502 (2006). Similarly, North Dakota has a rule that specifies that small accounts are ineligible for dividend payments. *See* N.D. ADMIN. CODE § 92-01-02-55 (2005). Therefore, no reason exists to compare Idaho's statute authorizing dividends to the markedly different statutes of Montana and North Dakota.

As to the third prong, the Fund asserts that because I.C. § 72-915 is ambiguous, the issue of how to distribute dividends is not precisely treated. However, we have determined otherwise. The language of the statute unambiguously provides the manner in which any declared dividend is to be distributed. Furthermore, no language in I.C. § 72-915 permits the imposition of an arbitrary $2,500 premium-payment threshold for entitlement to a dividend.

Since the second and third prongs are not met, the Fund has not shown that its interpretation of I.C. § 72-915 is entitled to deference.[7]

---

[7] It might be observed that, as a general proposition, an agency has a more difficult task arguing for deference to its interpretation of a statute when the agency's interpretation of the statute has changed without a change in the statute. I.C. § 72-915 has not been amended since 1941. The $2,500 premium-payment threshold was not imposed by the Fund until 2003. No such threshold existed between 1917, when I.C. § 72-915 was enacted, and 2003, when the $2,500 threshold was adopted. While the Fund argues strenuously for its current interpretation, the Plaintiffs could argue just as strenuously for the Fund's pre-2003 interpretation of I.C. § 72-915 – an interpretation of much longer standing.

8

**III.**

The district court's order granting summary judgment to the Fund is reversed and the case is remanded for further proceedings. Costs are awarded to Appellants.

Justices BURDICK and HORTON, and Justice Pro Tem KIDWELL CONCUR.