# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38140

| | | |
|---|---|---|
| RANDOLPH E. FARBER, SCOTT ALAN BECKER, and CRITTER CLINIC, an Idaho professional association, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Boise, December 2011 Term |
| v. | ) ) | 2012 Opinion No. 27 |
| THE IDAHO STATE INSURANCE FUND, JAMES M. ALCORN, its manager, and WILLIAM DEAL, WAYNE MEYER, MARGUARITE McLAUGHLIN, GERALD GEDDES, MILFORD TERRELL, JUDI DANIELSON, JOHN GOEDDE, ELAINE MARTIN, MARK SNODGRASS, RODNEY A. HIGGINS, TERRY GESTRIN, MAX BLANCK and STEVE LANDON in their capacity as members of the Board of Directors of the State Insurance Fund, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Filed: January 27, 2012 Stephen Kenyon, Clerk |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

The decision of the district court is <u>reversed</u> and the case is <u>remanded</u> for proceedings consistent with this opinion.

Lojek Law Offices, Chtd. and Gordon Law Offices, Boise, for appellants. Donald W. Lojek argued.

Hall, Farley, Oberrecht & Blanton, P.A., Boise, for respondents. Keely E. Duke argued.

_____

HORTON, Justice.

Randolph Farber, Scott Becker, and Critter Clinic (hereinafter "Farber") represent the plaintiffs in this class action lawsuit. Farber alleges that the Manager of the State Insurance Fund ("SIF" or "the Fund") failed to comply with I.C. § 72-915, which provides the means by which the SIF Manager may distribute a dividend to policyholders. The district court determined

1

that the gravamen of Farber's claim sounded in statute and held that the three-year statute of limitation provided by I.C. § 5-218(1) barred all claims that accrued prior to July 21, 2003. Farber timely appealed. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The litigation underlying this appeal was previously before this Court in *Farber v. Idaho State Insurance Fund*, 147 Idaho 307, 208 P.3d 289 (2009), rehearing denied (May 12, 2009) (*Farber I*). The facts are here restated:

> The Fund was created in 1917 to provide worker's compensation insurance to Idaho employers, particularly those employers who could not otherwise obtain insurance from private carriers. *See* I.C. § 72-901. The Board of Directors sets the Fund's policies while the Manager conducts the Fund's day-to-day operations. I.C. §§ 72-901 & 902. Since the Fund's inception, the Manager has, on occasion, distributed a dividend to policyholders pursuant to I.C. § 72-915. This dividend is different from the dividend issued to stockholders of a corporation and is instead a refund based upon a rate readjustment. From at least 1982 until 2003, whenever the Manager decided to distribute a dividend it was distributed to all policyholders who had paid premiums for at least six months prior to the distribution.[1] The amount of dividend each policyholder received was determined based on the premium amount the policyholder paid. Beginning in 2003, however, the Manager decided to calculate the dividend by splitting the entire surplus between those few policyholders who paid more than $2,500.00 in annual premiums to the Fund.[2] This practice continued during the following years' distributions as well.
>
> The Plaintiffs of this class action lawsuit are those Idaho employers who paid annual premiums of $2,500.00 or less to the Fund for worker's compensation insurance from the policy year beginning in 2001 onward. These class members comprise the majority of the Fund's policyholders.[3] Both parties moved for partial summary judgment regarding the proper interpretation of I.C. § 72-915. The Fund argued that the statute does not require the Manager to distribute dividends according to a set formula, but rather allows the Manager to exercise his discretion in determining how to distribute dividends amongst policyholders. The Plaintiffs conceded that the statute grants the Manager discretion in making the decision as to whether to distribute dividends, but argued that the statute prescribes how to distribute dividends once the Manager decides to make a distribution. The district court denied the Plaintiffs' motion for summary judgment, and instead granted the Fund's motion for partial summary judgment.

---

[1] The Manager stated in an affidavit that large policyholders were paid a larger percentage dividend than small policyholders, based in part on the fact that "certain costs associated with writing a policy are essentially the same whether it be for $2,000 or $200,000 policy."

[2] The dividend distributed in 2003 was for the policy year beginning in 2001.

[3] The parties estimate that the class may be as large as 30,000 members and comprises at least seventy-five percent of all the Fund's policyholders.

It then certified the judgment for appeal pursuant to Idaho Rule of Civil Procedure 54(b).

The Plaintiffs appealed to this Court, reiterating their argument that the statute grants the Manager no discretion regarding how to distribute dividends amongst policyholders.

*Farber I*, 147 Idaho at 309-10, 208 P.3d at 291-92. This Court agreed with the plaintiffs and reversed the district court's grant of summary judgment, holding that the plain language of I.C. § 72-915 "limited [the Manager's discretion] to the decision of whether or not to distribute a dividend in the first place." *Id.* at 312, 208 P.3d at 294.

On remand, the parties disputed whether the gravamen of the complaint sounded in statute or in contract, the resolution of which would determine whether I.C. § 5-218(1) (providing a three-year statute of limitation for liabilities arising under statute) or I.C. § 5-216 (providing a five-year statute of limitation for actions upon contracts) was applicable. The district court held that the gravamen of Farber's claim was grounded in statute and granted partial summary judgment in SIF's favor, dismissing as barred by the I.C. § 5-218(1) statute of limitation the claims and causes of action that accrued prior to July 21, 2003. Farber moved for reconsideration, which motion the court denied. The parties ultimately stipulated to a settlement agreement. The settlement agreement expressly permitted an appeal of the district court's statute of limitation rulings as to the dividend periods from July 1, 1999 through June 30, 2000 and July 1, 2000 through June 30, 2001. The court entered final judgment, and Farber appealed the statute of limitation issue to this Court.

## II. STANDARD OF REVIEW

"The determination of the applicable statute of limitation is a question of law over which this Court has free review." *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 388, 403, 111 P.3d 73, 88 (2005) (*Hayden Lake I*) (citing *Oats v. Nissan Motor Corp. in the U.S.A.*, 126 Idaho 162, 164–72, 879 P.2d 1095, 1097–1105 (1994)).

## III. ANALYSIS

Farber advances a claim for breach of contract arising from the incorporation of I.C. § 72-915[4] into the SIF's workers' compensation insurance policies. The issue in this case is

---

[4] Idaho Code § 72-915 states:

At the end of every year, and at such other times as the manager in his discretion may determine, a readjustment of the rate shall be made for each of the several classes of employments or industries. If at any time there is an aggregate balance remaining to the credit of any class of employment or industry which the manager deems may be safely and properly divided, he may in his discretion,

whether the gravamen of Farber's claim sounds in statute or contract.[5]  Farber contends that where a contract incorporates a statutory framework, there is a continuum between statute and contract upon which the gravamen of a claim may sound, and where the true gravamen of such a claim is subject to reasonable dispute, the five-year statute of limitation for actions arising from contract should apply.  Farber also contends that because his claim involves the consideration supporting the parties' contract it falls on the contract end of the continuum such that the Court should apply the statute of limitation applicable to contracts.

We hold that Farber's claim is grounded in contract and, thus, the five-year statute of limitation in I.C. § 5-216 applies.  In so doing, we overturn the holding regarding application of the statute of limitation in *Hayden Lake Fire Protection Dist. v. Alcorn* (*Hayden Lake I*), 141 Idaho 388, 111 P.3d 73 (2005) because it is manifestly incorrect.  This is so because there would be no grounds upon which Farber could seek redress if the insurance contract did not exist.

Farber correctly argues:

> Absent a contract of insurance with the SIF, [I.C. § 72-915] confers no rights to any employer and imposes no duties on the SIF.  The statute, standing by itself, does not create a cause of action.  Employers in the State of Idaho who do not have an "agreement" or a "policy" or "contract" with the SIF are not entitled to any dividends pursuant to I.C. § 72-915. . . .  It is the **contract** and its breach by the SIF that allow the Plaintiffs and their Class to bring this action . . . .

Former I.C. § 72-915 was a provision of the contract, and our previous decision in this matter allowed Farber to recover by virtue of this Court's interpretation of that contract provision.  *See Farber I*, 147 Idaho at 312, 208 P.3d at 294.

The insurance contract at issue here would not be complete without the premium provisions set out in Chapter 9, Title 72, Idaho Code.  The policy issued to Farber and the other insureds only sets out the consideration that insureds will receive under the contract, i.e., the policy coverage provisions.  Nothing in the policy outlines the consideration SIF will receive in exchange for the coverage—there is no mention of the premium or how it will be calculated.

---

credit to each individual member of such class who shall have been a subscriber to the state insurance fund for a period of six (6) months or more, prior to the time of such readjustment, such proportion of such balance as he is properly entitled to, having regard to his prior paid premiums since the last readjustment of rates.

Repealed by act effective May 6, 2009, ch. 294, § 1(6).

[5] Under I.C. § 5-218(1), a three-year statute of limitation applies to "[a]n action upon a liability created by statute, other than a penalty or forfeiture. . . ."  In contrast, under I.C. § 5-216, a five-year statute of limitation applies to "[a]n action upon any contract, obligation or liability founded upon an instrument in writing."

Rather, only the statutory provisions do that. As Farber suggests, they are essential to the contract and its enforcement. Idaho Code § 72-905 authorizes the SIF Manager to make contracts of insurance. Idaho Code § 72-918 states that "[e]very employer insuring in the state insurance fund shall receive from the manager a contract or policy of insurance." Idaho Code § 72-913 requires the Manager to establish equitable rates for SIF's insurance policies and to fix premiums "with due regard to the physical hazards of each industry, occupation, or employment, and, within each class, so far as practicable, in accordance with the elements of bodily risk or safety or other hazard . . . together with a reasonable regard for the accident experience and history of each such insured."[6] Idaho Code § 72-914 requires the Manager to account for monies paid in premiums based upon the classes of employment and to keep account of the disbursements and reserves. Former Idaho Code § 72-915 gave the Manager discretion to readjust rates and make refunds to policyholders. Idaho Code § 72-919 makes provision for recovery by SIF of delinquent premiums. Idaho Code § 72-923 creates liability against employers who misrepresent the amount of payroll upon which their premiums are calculated, imposing a penalty and providing for enforcement in a civil action by the Manager.

These are not statutes of general application. Rather, these statutory provisions apply only to SIF policies, which are issued by SIF as only one of the worker's compensation insurance carriers in the State. The provisions apply to no other worker's compensation policies. They are written into, and become an integral part of, SIF's worker's compensation insurance policies. Idaho Code § 72-913 serves no purpose other than to establish the premium to be charged for SIF's insurance contracts. Former I.C. § 72-915 served no purpose other than to allow the Manager to refund a portion of such contractual premiums. The only purpose of either provision was to fill in the blanks left open by the insurance policy. Without these provisions, which are essential to establish the consideration to be paid by the insured, and to be received by SIF, there could be no valid contract. *See Vanderford Co., Inc. v. Knudson*, 150 Idaho 664, 672,

---

[6] The premium to be charged by SIF for an individual employer/policyholder is likely stated in a declaration sheet. Farber did not include a declaration sheet in the record before the Court. However, when an employer applies for an SIF insurance contract, the amount of the premium is not necessarily known. The application, which is contained on SIF's website (www.idahosif.org), calls for the employer to describe the business and the type of work done by each type of employee, to provide information of prior coverage, and to provide specific information relative to employment risks. With the information provided on the application, SIF then calculates the premium "by multiplying your total annual payroll for each business classification code (or combination of codes) assigned to your policy by the rate per $100 of payroll for each class code," subject to specified modifications. *See* SIF website.

249 P.3d 857, 865 (2001) ("A contract must be complete, definite and certain in all its material terms . . . .").

This Court held in *Kelso & Irwin, P.A. v. State Insurance Fund*, 134 Idaho 130, 997 P.2d 591 (2000):

> It is undisputed that Kelso has a contract for worker's compensation insurance with the SIF. Any violation of the provisions of that contract would constitute a breach of contract by the SIF. Additionally, the contract necessarily incorporates the statutory framework which both created the SIF and governs the actions that can be taken by the SIF with regard to the SIF's funds. When Kelso contracted with the SIF it was entitled to rely on the statutes creating and regulating the SIF, and the limits those statutes place on how the SIF can invest its policyholders' premiums. Consequently, any act taken by the SIF beyond its statutory authority would also be a breach of the SIF's contract with Kelso.

*Id.* at 138, 997 P.2d at 599. In that case, the Court went on to hold that a claim seeking "the return of all monies to the policyholders held by the SIF under the designation of 'surplus as regards policyholder' in excess of the six million dollars of 'reserves and surpluses' required by [former] I.C. § 72-911" was "a cause of action for breach of contract on this issue." *Id.* at 138, 140, 997 P.2d at 599, 601. The Court held further that the plaintiff in that action had asserted a breach of contract claim by alleging SIF "has squandered assets and acted beyond its statutory authority by purchasing certain real property and then leasing that property to the State." *Id.* at 140, 997 P.2d at 601. It logically follows that a breach of contract suit, based upon such statutory provisions, is subject to the statute of limitation for contract actions in I.C. § 5-216.

It would be an odd result to hold that some parts of an insurance contract were subject to a three-year statute of limitation, while other parts of the contract were subject to a five-year statute of limitation. Under the provisions that were not statutorily written into the insurance contract, either party could seek enforcement of the insurance contract for a period of five years, while the parties would only have three years to seek enforcement of the statutory provisions written into the contract. Since the written policy spells out most of the insured's rights, suit could be brought against SIF during a period of five years in order to recover for breach of SIF's obligations thereunder, e.g., an alleged failure to make proper payment for a worker's compensation claim or to properly indemnify the insured against any liability under the policy. On the other hand, since SIF's rights under the contract are virtually all statutory in nature, it would be subject to a three-year statute of limitation to seek redress from its insureds. For example, since I.C. § 72-919 provides the statutory mechanism to enforce payment for, or

6

recovery of, delinquent premiums, SIF would have only three years to file suit to recover a delinquent premium. Similarly, where an employer had misrepresented the amount of payroll upon which the premium was calculated, SIF would have only three years to bring suit under I.C. § 72-923 to recover any premium underpayment and the penalty provided for therein. The SIF-insured employers, as in this case, would only have three years to recover a rate readjustment should the Manager determine that the initial premium was in excess of SIF's needs.

This Court's holding in *Dietrich v. Copeland Lumber Co.*, 28 Idaho 312, 154 P. 626 (1916), does not dictate this odd result. Indeed, it has no application here. *Dietrich* was not a situation where a statutory provision was implied into a contract and, indeed, the statutory provision in *Dietrich* had nothing to do with the enforcement of the contract at issue there. That case involved a claim for recovery on promissory notes that had been executed by a foreign corporation. *Id.* at 315, 154 P. at 627. The corporation "had not complied with the laws of the state of Idaho in regard to filing its articles of incorporation and designating an agent upon whom service of process might be had in this state." *Id.* Former section 2792, Revenue Codes, made officers of a noncomplying corporation personally liable upon indebtedness contracted for while the corporation was noncompliant. *Id.* at 318, 154 P. at 628. That statute was a stand-alone provision that did not become a part of any contract, and the action to recover against the officers was not a contract action but, rather, an action only available because of the statute penalizing officers of noncomplying corporations. The officers being sued in *Dietrich* were not parties to the notes, and the liability *Dietrich* attributed to the corporate officers was non-contractual in nature. These facts are wholly distinguishable from those of the present case, where the very nature of the case is a suit on a contract to recover a rate readjustment, i.e, a portion of the consideration paid for the contract. *See Farber I*, 147 Idaho at 309, 208 P.3d at 291 (a dividend under I.C. § 72-915 is "a refund based upon a rate readjustment."). While a policyholder could not sue SIF to force the payment of a rate refund under former I.C. § 72-915 because any rate readjustment was left to the discretion of the SIF Manager, *Kelso & Irwin*, 134 Idaho at 139, 997 P.2d at 600, once the Manager decided to issue a refund, it had to be made to all policyholders on a pro rata basis under that code section. *Farber I*, 147 Idaho at 312, 208 P.3d at 294. This right to a pro rata share of such refunds was an integral part of the bargained-for consideration that supported the parties' contract. Based on the important distinctions between *Dietrich* and the line of cases dealing with statutory provisions incorporated into the SIF policies, we hold that the

7

Court's decision in *Hayden Lake I,* regarding the applicable statute of limitation, is clearly erroneous.[7] The Court erred by relying on *Dietrich* without analyzing its facts, which are so distinguishable that the case is simply inapplicable, to both *Hayden Lake I* and the present case.

Viewed in retrospect, in *Hayden Lake I,* this Court should have considered this Court's decisions in two other cases where statutes played a part in what were essentially actions to recover on contract. The first case, *Lincoln County v. Twin Falls North Side Land & Water Co.*, 23 Idaho 433, 130 P. 788 (1913), involved a situation where the county recorder of Lincoln County made a deal with a Carey Act company to charge less than the legislatively-mandated fee for recording property documents. *Id.* at 438-39, 130 P. at 790. Although the county commissioners initially approved the agreement, they subsequently sought to recover the deficiency in the recording fees. *Id.* at 439, 130 P. 790. The Court held that because the contract ran counter to the statute, it was void. *Id.* With regard to the contention that recovery beyond three years was unavailable to the county because the liability was created by statute, the Court said:

> Finally, it is argued that a part of this claim is barred by the provisions of subd. 1, sec. 4054, Rev. Codes. That statute provides, "An action upon a liability created by statute, other than a penalty or forfeiture," shall be commenced within three years after the cause of action accrued. We cannot agree that this is the kind of an action contemplated by subd. 1, see. 4054. This cause of action was not created by statute. On the contrary, we think it is governed by the provisions of sec. 4053, which provides that, "An action upon a contract, obligation, or liability not founded upon an instrument of writing," shall be commenced within four years from the accrual thereof. This is clearly an action upon contract.

*Id.* at 440, 130 P. at 791.

The second case, *Cruzen v. Boise City*, 58 Idaho 406, 74 P.2d 1037 (1937), involved an action by property owners against the city for failure of the city clerk to properly apply payments made by the property owners on a local improvement assessment on bonds upon which they were obligated. The property owners paid the clerk sufficient money to pay the bonds in full, but the clerk never paid part of the amount to the bond holder, having embezzled the same. *Id.* at

---

[7] We note also that the reasoning of *Hayden Lake I* does not extend to this case because the statutes at issue in that case were not necessary and integral components of the contract at issue. The Court's statute of limitation holding in *Hayden Lake I* dealt solely with real estate-related claims arising under provisions of Idaho's insurance law, particularly I.C. §§ 41-722 and 41-728. 141 Idaho at 392, 404, 111 P.3d at 77, 89. Those provisions are, at best, peripheral to the insurance contract. The provision at issue here, however, being part of the contract consideration, is an integral and necessary part of the contract.

8

410-11, 74 P.2d at 1037. The city claimed it was not responsible for the clerk's defalcation, citing a statutory provision (I.C. § 49-2728) stating that "[t]he holder of any bond issued under the authority of this Article [chapter] shall have no claim therefor against the municipality by which the same is issued, in any event, except for the collection of the special assessment made for the improvement for which said bond was issued . . . ." *Id.* at 411, 74 P.2d at 1038. The property owners claimed that the exception made the city liable for the clerk's errant behavior. The Court held:

> The plain reading of the statute . . . supports [the property owners] and not [the city]. The statute says the holder of bonds shall have no remedy against the municipality, "except for the collection of the special assessment." The Legislature intended the statute should mean something, and the evident interpretation is that the city would be liable for the bona fide collection of the assessments. Thus the statute itself makes an exception as to collection, and the collection would be of no avail unless the money collected is disbursed as it should be.

*Id.* at 412, 74 P.2d at 1039. Although the city had no obligation to collect the bond assessments, since another statute, I.C. § 49-2721, authorized (but did not require) the city clerk to collect such assessments, the Court held that because the city opted to make collection under that section, "[t]he city cannot now question the legality of its acts since there was statutory authority therefor and it assumed to and did proceed under said statute." *Id.* at 413, 74 P.2d at 1039. The Court went on to say:

> Section 49-2728, I.C.A., supra, did not *create* the liability, it does not require the city to make good the defalcations of its officers, it merely removed any bar to the enforcement of the trust against appellant by respondent, which might have existed because the bonds were not general obligations of the city.

*Id.* at 415, 74 P.2d at 1040 (emphasis original). The Court went on to note that the cause of action was not based on the statute, but rather on the obligation resting on every trustee to fulfill and comply with the terms of a trust. *Id.* That being the case, the Court held, "[t]he cause of action not being created by statute, it is not a statutory liability governed or barred by [I.C. §] 5-218." *Id.* The Court then cited the above-quoted language from *Lincoln County* and observed:

> [*Lincoln County*] considered section 2124, Rev. Codes, to be in effect a contract comparable to considering section 49-2723 I.C.A., and the underlying ordinances all carried into, and in effect made provisions of the bonds, as constituting the contract between the city and the bondholders creating the trust, but not creating the liability for violation of the trust, which later arises by operation of law when a trust comes into existence.

9

*Id.* at 416, 74 P.2d at 1041.

The *Lincoln County* and *Cruzen* decisions stand for the proposition that a contract statute of limitation will apply where, even though statutes provide a critical element for recovery, the action is primarily a contract action instead of an action authorized by a specific statutory provision. The *Cruzen* court indicated that the statutory provisions in each case were essentially contractual provisions that facilitated recovery under the contracts. Both cases depended on a contractual relationship in order for the plaintiff to have any claim—in the case of *Lincoln County*, it was the contract between the county recorder and the Carey Act company, and in *Cruzen* it was the contract between the property owners and the bond holder.

This rationale extends to the present case—here there would be no claim but for the contracts between SIF and Farber and the other members of his class. *Hayden Lake I* was erroneously decided because it did not take the *Lincoln County* and *Cruzen* precedents into account. Where a holding establishing precedent on a question of law is manifestly wrong, we should correct it. *Greenough v. Farm Bureau Mut. Ins. Co.*, 142 Idaho 589, 592-93, 130 P.3d 1127, 1130-31 (2006). The Court's statute of limitation holding in *Hayden Lake I* is manifestly wrong, particularly as it applies in this case, and we therefore overrule it.[8] We hold that the five-year statute of limitation in I.C. § 5-216 applies to Farber's claim.

### IV. CONCLUSION

We reverse the district court's dismissal of the claims barred by application of I.C. § 5-218(1) and remand for proceedings consistent with this opinion. Costs to Appellants.

Chief Justice BURDICK and Justices J. JONES, W. JONES and Justice Pro Tem KIDWELL **CONCUR**.

---

[8] Similarly, the Court's ruling on attorney fees in *Hayden Lake Fire Protection District v. Alcorn* (*Hayden Lake II*), denying attorney fees to SIF because the case was based on statute and not upon contract, is erroneous. 141 Idaho 307, 312-13, 109 P.3d 161, 166-67 (2005).