# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46374

VICTOR RODGER BLISS, )
)
    Plaintiff-Appellant, )
)     **Boise, April 2020 Term**
v. )
)     **Opinion Filed: July 15, 2020**
MINIDOKA IRRIGATION DISTRICT, )
)     **Melanie Gagnepain, Clerk**
    Defendant-Respondent. )
)

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. John K. Butler, District Judge.

The judgment of the district court is <u>affirmed</u>.

Evans, Grover & Beins, PC, Tremonton, Utah, for Appellant.

Hall Angell & Associates, LLP, Idaho Falls, for Respondent.

_____

BURDICK, Chief Justice.

Victor Rodger Bliss appeals the district court's award of summary judgment in favor of the Minidoka Irrigation District ("MID"). Bliss filed a complaint against MID in April 2017, alleging (1) breach of contract, (2) breach of fiduciary duty; (3) trespass, (4) declaratory relief; and (5) wrongful prosecution/infliction of extreme emotional distress. The complaint encompassed multiple events stemming from his decades-long relationship with MID. The district court granted MID's motion for summary judgment on all claims, dismissing Bliss's complaint for lack of notice under the Idaho Tort Claims Act, lack of standing, and failure to produce evidence. Bliss timely appealed. For the reasons below, we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. FACTUAL BACKGROUND

Bliss owns roughly 76 acres of farmland within the service boundaries of MID. Since the year 2000, Bliss has leased his property to Alan and Debra Woodland, who farm the land and pay annual rent.

MID is an irrigation district organized under Title 43 of the Idaho Code. MID stores and delivers irrigation water to member properties. Each member has a head gate or valve at a point of diversion along MID's canals where the members obtain water for their property in coordination with a ditch rider employed by MID.

Bliss's diversion headgate takes water from a lateral ditch and pipes it to his irrigation pump. Four other water users take water from the same lateral ditch. Bliss's diversion headgate is the third diversion in line.

Downstream from Bliss's diversion headgate is a "check structure." The check structure exists to slow the water current within the lateral ditch so that adequate water levels are maintained for all users taking water from the ditch. The check structure features a headgate that can be raised and lowered to adjust the amount of water available in the shared lateral ditch. In addition to the check structure, the lateral ditch also has a "dirt plug" which is usually removed in the fall and replaced in the spring to control operational spills and help channel floodwater to a sump.

Sometime between 1998 and 2000, MID moved this lateral ditch so that it ran along Bliss's property. When MID excavated the area for the new placement of the canal, it deposited the displaced soil as an embankment. Bliss contends that the displaced soil partially covered and destroyed his boundary fence. MID claims that the soil was deposited within its right-of-way and any effect on Bliss's fence was minimal.

In the summer and fall of 2015, Bliss and MID's relationship soured and resulted in the exchange of letters that form the basis of this case.

In July 2015, Bliss sent MID an invoice ("Bliss's Invoice Letter") for $2,015 for time and expense he claimed he incurred in spraying noxious weeds where MID's lateral ditch adjoined his property. In the memo line, Bliss wrote that the bill was the result of MID's refusal to spray the weeds itself, informing MID that he would bill semiannually for his efforts to control the noxious weeds. The MID Board of Directors considered Bliss's Invoice Letter, but declined to pay it. In a

response letter sent to Bliss, MID explained that it had not given prior authorization for the work and that Bliss had denied MID access to perform the work in the past.

After receiving MID's refusal, Bliss retained counsel and, through counsel, responded by letter in September 2015 ("Bliss's September Letter"). Bliss reiterated his demand that MID compensate him for removing the weeds. He further complained that "just recently" a lateral ditch had overflowed onto his crops "due to poor maintenance[.]" Bliss stated that "[a] request will be made for these repairs to MID's lateral ditch and resulting losses and costs in the near future," but that the damages were "in the process of being calculated." The MID Board again reviewed Bliss's letter and responded. The Board reiterated its stance on Bliss's Invoice Letter and stated that if Bliss believed that crops were damaged from MID's negligence, he should file a tort claim.

Bliss followed up with a "response and demand" in November 2015 ("Bliss's November Letter"). Bliss told MID that it had 30 days to pay the invoice before he would "initiat[e] legal action." Bliss also warned MID that he "will be pursing the flooding matter as a tort claim when all his information is gathered." Despite this ultimatum, Bliss did not initiate legal action once the 30 days passed.

Some seven months after Bliss's November Letter, in late June 2016, Bliss arranged a meeting with the Chairman of MID's Board, Frank Hunt. When the two met at Bliss's property, their conversation focused on Bliss's complaint that his water pump was unable to properly function because of low water levels in the lateral ditch. During the hours-long meeting, Bliss showed Hunt the check structure and voiced his belief that the low water levels were due to a faulty design of the check structure. Hunt agreed with Bliss that "it would be better if the ditch was fuller," but their conversation ended without any decisions regarding the water levels or the check structure being made.

At the time of their meeting, and for a period of time before the meeting, the check structure's diversion headgate was locked because, according to Hunt's testimony, MID "had problems with that diversion structure being tampered with and running downstream water users out of water."

However, later on the same evening as their meeting, Bliss called Hunt to complain that his pipe movers had shut off the pump because of the low water level. When Bliss asked Hunt what he should do, Hunt said something to the effect of "sounds like you need more water in the

ditch." Hunt would later explain that he was implying that Bliss could "tweak" a headgate at the head of the canal—a practice common on the farms Hunt grew up on.

Evidently, the two misunderstood each other because the next morning, MID discovered that someone had cut the lock on the check structure and closed the headgate, cutting off water to downstream users. The person had also taken the lock, chain, and the wheel used to raise and lower the headgate. When Hunt called Bliss—believing him to be responsible—and asked him why he cut the lock, Bliss responded "I don't know anything about a lock and I have already talked to my attorney."

That same day, Vance Johnson, MID's assistant watermaster, spoke with other water users on the lateral ditch. The water users claimed to have witnessed Bliss, accompanied by his wife, cut the padlock and chain off the check structure. At MID's office, Johnson called Bliss on the telephone. When Johnson began asking about the check structure, Bliss began yelling at him. Johnson put Bliss on speakerphone and walked into various MID employees' offices during Bliss's outburst. When Johnson asked Bliss if he had removed the lock and chain, Bliss said some variation of "Hell yeah I took it, and you're not getting it back."

MID reported the incident to the Minidoka County Sheriff's Office. MID's employees submitted voluntary statements, including both those who personally spoke with Bliss following the incident and those who had heard his outburst over speakerphone. Following an investigation, the Minidoka County Prosecutor's Office filed a misdemeanor complaint charging Bliss with wrongful diversion of water under Idaho Code section 18-4304. Bliss defended against these charges. Ultimately, Bliss paid $75.00 in restitution to MID and the charges were dismissed.

In late 2016, the MID Board of Directors visited the lateral ditch and Bliss's property to assess Bliss's complaints regarding the check structure. A few board members thought the check structure was suboptimal, describing it as "funny" or "a Mickey Mouse set up," but the Board never reached a consensus about whether a different structure would better serve the lateral ditch.

On February 28, 2017, Bliss sent a "Notice of Tort Claim" to MID through his attorney. Addressed specifically to MID's secretary, Ruth Bailes, the letter explicitly cited the Idaho Tort Claims Act and pinpointed MID's actions on June 30, 2016—namely contacting the Minidoka County Sheriff and submitting statements—as the conduct underlying his anticipated tort claim. Bliss asserted that this conduct led to the wrongful filing of a misdemeanor complaint and claimed two categories of damages. First, he claimed $4,430.16 in damages for attorney's fees to defend

4

himself, lost time and income from work, and out-of-pocket expenses for travel and incidental expenses. Second, Bliss claimed that his "reputation and character were defamed and damaged with these false statements" in the sum of $50,000.

## B. PROCEDURAL HISTORY

On April 17, 2017, Bliss filed an unverified complaint against MID detailing five counts: (1) "breach of contract"; (2) "breach of fiduciary duty"; (3) "trespass"; (4) "declaratory relief"; (5) and "wrongful prosecution/infliction of extreme emotional distress".

In Count 1, Bliss alleged that he entered into a contract with MID "for the delivery of water" and that MID breached that contract by failing to deliver adequate water or maintain its water-delivery appurtenances.

In Count 2, Bliss alleged that MID owed him a fiduciary duty to deliver water, maintain its ditches in good repair, and construct and maintain a drainage system that reasonably avoided flooding. Bliss claimed that MID breached this duty by failing to (i) deliver adequate water, (ii) maintain and repair its ditches, and (iii) construct devices to prevent the natural or reasonable drainage flow of water from his property.

In Count 3, Bliss alleged that MID trespassed on his property by intentionally placing dirt from its canal on top of Bliss's property and on his fence. Bliss claimed MID lacked the legal right or authority to do so and their actions damaged the fence.

In Count 4, Bliss sought a declaratory judgment that: (i) he is "entitled to receive enough water . . . to sufficiently water his crops"; (ii) water "is deliverable pursuant to the times and schedules set forth by MID each water season"; (iii) MID is "required by law to control the noxious weeds upon and within its canals, ditches, and surrounding banks where it utilizes its easement"; and (iv) MID "is required to have all director meetings open to the public at large."

Lastly, in Count 5, Bliss alleged that MID "made a report of false facts to the Minidoka Sheriff's Office for the purpose of seeking to have Bliss prosecuted criminally." The "false facts" were MID's statements that Bliss "did not have authority to obtain sufficient water by closing a water check in the canal" because MID knew that Bliss had been given this authority by Frank Hunt. Bliss alleged he was able to "secure a dismissal" at "large expense of time, emotional distress, and costs[.]"

MID answered and counterclaimed for trespass and declaratory relief based on a canal crossing Bliss had installed without obtaining its prior approval.

5

Once discovery concluded, MID filed a motion for summary judgment on all claims.[1] MID argued that Bliss's claims for breach of fiduciary duty, trespass, and wrongful prosecution/intentional infliction of emotional distress should be dismissed because Bliss failed to file notice under the Idaho Tort Claims Act ("ITCA"). It further argued that it is immune from liability for wrongful prosecution or, alternatively, that Bliss failed to establish essential elements of the claim, among them malice or criminal intent. MID argued that summary judgment was proper on Bliss's declaratory relief claim because Bliss lacked standing for want of an actual injury. MID supported the motion with affidavits from the following: its attorney; Dan Davidson (MID's manager); Frank Hunt; Ruth Bailes; and Vance Johnson.

In response, Bliss argued, among other points, that there were disputes of material fact that precluded summary judgment and the ITCA did not apply to his breach-of-fiduciary duty and trespass claims because they are not torts, but arose instead from Bliss's "implied contract" with MID. Bliss contended that, even if the ITCA applied, all his correspondence with MID—beginning with his Invoice Letter—were sufficient to satisfy ITCA's notice requirements. Bliss claimed he produced evidence showing that MID acted with malice and criminal intent by pointing to MID's statements to the Minidoka County Sheriff's Office. Bliss also contended that these statement provided evidence for his intentional infliction of emotional distress ("IIED") claim. Lastly, Bliss argued that declaratory relief was appropriate because it would remedy actual injuries.

The district court granted MID's motion on all counts and dismissed Bliss's complaint.[2] For Count 1, the district court determined that Bliss failed to establish a contract between himself and MID because (i) Bliss's complaint alleges a "contract" rather than an "implied contract"; (ii) Idaho case law provides that the remedy for failure to maintain a ditch or deliver water rests in tort, not contract law. It further determined that Bliss's claims for breach of fiduciary duty (Count 2), trespass (Count 3), and intentional infliction of emotional distress (part of Count 5) were all torts, and thus should be dismissed for lack of notice under the ITCA. The district court ruled in the alternative on Count 2, determining that Bliss failed to establish a triable issue of fact regarding

[1] This included MID's counterclaims for trespass and declaratory relief. The district court ultimately denied MID's counterclaim for trespass and dismissed its counterclaim for declaratory relief. This part of the district court's order has not been appealed.

[2] After a hearing, and taking the motion under advisement, the presiding judge recused himself as he was named as a witness in Bliss's ITCA Notice. With the consent of the parties, the newly assigned judge ruled on the motion after listening to a recording of the hearing.

his breach-of-fiduciary-duty claim because Bliss's focus was on statutory duties—the violation of which had long been held answerable in negligence. The district court also ruled in the alternative on the IIED part of Count 5, determining that Bliss had failed to (i) produce evidence showing that he suffered "severe emotional distress" or (ii) produce evidence that MID's conduct was "atrocious" or "beyond all possible bounds of decency."

The district court concluded the ITCA Notice Letter was adequate for Bliss's wrongful-prosecution claim in Count 5. Nonetheless, the district court determined that the claim failed on the merits because Bliss could not show that the proceeding terminated in his favor given that he agreed to pay $75 in restitution in order to get the case dismissed. Alternatively, the district court ruled that MID was immune from suit because Bliss had not presented adequate evidence to show that MID acted with malice or criminal intent.

Lastly, the district court ruled that Bliss was not entitled to declaratory relief in Count 4 because he lacked standing to bring his claims. Specifically, the district court emphasized that Bliss failed to allege any actual injury or present any evidence of an actual or threatened injury from lack of water despite some evidence that Bliss, at times, had not received water. On the subject of noxious-weed abatement, the district court highlighted that both MID and Bliss have a statutory duty to control the weeds under Chapter 24, Title 22, and thus, no declaration was needed. Lastly, the district court explained that Bliss had failed to produce any evidence that he was excluded from a Board Meeting, negating the need for a declaration in that regard.

Bliss timely appealed.

## II. ISSUES ON APPEAL

A. Did the district court properly dismiss Bliss's claims for breach of fiduciary duty, trespass, and intentional infliction of emotional distress for failure to properly file notice under the Idaho Tort Claims Act?

B. Did the district court err in determining that Bliss had failed to produce evidence to support an element of his claim of malicious prosecution?

C. Did the district court err in determining that Bliss could not show the existence of an implied contract with MID as a matter of law?

D. Whether the district court erred in dismissing Bliss's claim for declaratory relief for failure to show a justiciable controversy?

E. Is either party is entitled to attorneys fees on appeal?

## III. STANDARD OF REVIEW

We review a trial court's grant of summary judgment under the same standard applied by the trial court. *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005). A reviewing court will construe all disputed facts and make all reasonable inferences in favor of the nonmoving party. *Sprinkler Irr. Co. v. John Deere Ins. Co.*, 139 Idaho 691, 695–96, 85 P.3d 667, 671–72 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

*Pioneer Irr. Dist. v. City of Caldwell*, 153 Idaho 593, 596, 288 P.3d 810, 813 (2012).

"Whether a fiduciary relationship exists is a question of law." *Skinner v. U.S. Bank Home Mortg.,* 159 Idaho 642, 647, 365 P.3d 398, 403 (2016) (quoting *Beaudoin v. Davidson Trust Co.*, 151 Idaho 701, 705, 263 P.3d 755, 759 (2011)).

## IV. ANALYSIS

### A. Count 1 ("breach of contract"), Count 2 ("breach of fiduciary duty"), and Count 3 ("trespass") are tort claims subject to the Idaho Tort Claims Act.

The district court determined that the Idaho Tort Claims Act applied to Bliss's lawsuit and he failed to provide the required notice under the ITCA for a number of his claims. In an effort to avoid the notice requirements of the Idaho Tort Claims Act, Bliss argues that Count 2 ("breach of fiduciary duty"), Count 3 ("trespass"), and a portion of Count 5 ("intentional infliction of emotional distress") do not sound in tort, and thus, need not comply with the ITCA. Beyond his argument that Counts 2 and 3 are not tort claims, Bliss does not dispute that the Idaho Tort Claims Act applies in this case. *See* I.C. § 6-903(1); I.C. § 6-902. We disagree. For the reasons below, we find that Count 2, Count 3, and Count 5's IIED claim are all torts subject to the ITCA's notice requirement. In addition, we find that Count 1 ("breach of contract") is actually a tort claim and also subject to the ITCA's notice requirement.

We begin with Count 3 ("trespass"). Bliss argues that his tort claim "sounded in trust and contract law" because it "emanates from MID's implied contract and trust holder duties of Bliss's water rights." We disagree. An action for trespass is, at its core, a tort action. *See Walter E. Wilhite Revocable Living Tr. v. Nw. Yearly Meeting Pension Fund*, 128 Idaho 539, 549, 916 P.2d 1264, 1274 (1996) ("Trespass is a *tort* against possession committed when one, without permission, interferes with another's exclusive right to

8

possession of the property."). That Bliss's trespass claim also involved the alleged placement of dirt on his property and fence makes no difference. *See* Restatement (Second) of Torts § 161 (1965) ("A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it."). In short, Count 3 sounds in tort.

Count 1 ("breach of contract") and Count 2 ("breach of fiduciary duty") require a more detailed analysis.

Generally speaking, Bliss is correct that matters arising out of a contract do not implicate the ITCA. The ITCA is a limited waiver by the State of its sovereign immunity, allowing tort claims arising out of certain circumstances so long as certain procedures are observed. *Dodge v. Bonners Ferry Police Dep't*, 165 Idaho 650, 654, 450 P.3d 298, 302 (2019). The ITCA's limited waiver is not necessary when the State enters into an express contract, because the State has effectively consented to be sued for actions arising out of contract. *See Grant Const. Co. v. Burns*, 92 Idaho 408, 413, 443 P.2d 1005, 1010 (1968) ("[W]here, as here, the state has entered into a contract pursuant to legislative authorization, the state has consented to be sued for alleged breaches of its contractual responsibilities and cannot invoke the protection of sovereign immunity."). As such, if Counts 1 and 2 arose out of an express contract, Bliss would have a viable argument that the ITCA did not apply to his claims.

However, focusing on the nature of the causes of action articulated in Count 1 and Count 2 (rather than the designations Bliss gave them) reveals that they articulate causes of actions that have long been considered tort claims in Idaho. For over a hundred years, this Court has held that water users may hold irrigation districts to answer for violations of their statutory duties in tort, not contract. *See Snake River Valley Irr. Dist. v. Stevens*, 18 Idaho 541, 543–47, 110 P. 1033, 1033–34 (1910); *Johnson v. Burley Irr. Dist.*, 78 Idaho 392, 304 P.2d 912 (1956); *Brizendine v. Nampa Meridian Irr. Dist.*, 97 Idaho 580, 584, 548 P.2d 80, 84 (1976); *Savage Lateral Ditch Water Users Ass'n v. Pulley*, 125 Idaho 237, 245 n.4, 869 P.2d 554, 562 n.4 (1993). Likewise, attempts to characterize the relationship between an irrigation district and its water users as contractual have been expressly rejected. *See Snake River Valley Irr. Dist.*, 18 Idaho at 543–47, 110 P. at 1033–

9

34. And while we have held that irrigation districts have limited fiduciary duties as trustees of their water users' water rights, Bliss's allegations do not implicate those duties.

To explain, we must first analyze the causes of action stated in the Complaint. Both counts concerned MID's alleged failure to deliver water. In Count 1, Bliss alleged a contract "for the delivery of water" that MID breached "when [MID] failed to deliver adequate water" and when it "failed to maintain and repair the canals, ditches, and other water appurtenances for the delivery of water." Count 2, much like Count 1, alleged that MID owed Bliss a fiduciary duty to "deliver water" which was breached by "failing to deliver adequate water." But Count 2 also addressed improper maintenance and alleged flooding. It alleged that MID had a fiduciary duty "to maintain and keep in repair its ditches, canals, and laterals" and "construct and maintain its drain works, ditches, canals and laterals in a manner that reasonably avoids flooding." Bliss claimed that MID breached this duty by "failing to maintain and repair its ditches, canals, and laterals"; and by "constructing earthen dams, plugs, or other devices to prevent the natural or reasonable drainage flow of water from Bliss's farm property."

Superimposing each of these causes of action on relevant provisions of the Idaho Code demonstrates that Bliss's causes of action implicate *statutory* duties—not those duties arising out of contract or a fiduciary relationship. For instance, the allegations focusing on the delivery of adequate water fall under Idaho Code sections 42-1201 (providing that ditch owner must "keep a flow of water . . . sufficient to the requirements of such persons as are properly entitled to the use of the water therefrom" from April to November) and 42-1202 (providing that a canal owner must "maintain [its ditches, canal, or conduit] in good order and repair, ready to deliver water," by April and "shall construct the necessary outlets . . . for a proper delivery of water to persons having rights to the use of the water."). Likewise, Idaho Code sections 42-1203 and 42-1204 address the allegations concerning the failure to adequately maintain the canals to ensure effective water management and protect against property damage. *See Brizendine*, 97 Idaho at 583, 548 P.2d at 83 ("[Idaho Code section 42-1204] has been construed to the effect that an irrigation district, as owner of a canal, would be liable for any damage caused by its

10

negligence in the maintenance of the canal.") (citing *Smith v. Big Lost River Irr. Dist.*, 83 Idaho 374, 364 P.2d 146 (1961)).

Bliss's attempt to characterize these duties as fiduciary in nature does not sever their statutory roots. As an initial matter, the source of the fiduciary duty Bliss identifies is a statute. *See* I.C. § 43-316 (providing that an irrigation districts holds "legal title" to all such property which it holds "in trust for . . . the uses and purposes set forth in this title."); *see also Jensen v. Boise-Kuna Irr. Dist.*, 75 Idaho 133, 141, 269 P.2d 755, 760 (1954) ("[T]he title to all property acquired by an irrigation district, including its water rights, is vested in the district and held by the district in trust for, and dedicated and set apart to, the uses and purposes set forth in the law."). Under our case law, this fiduciary duty merely requires an irrigation district to prioritize delivery to its own water users before allowing irrigation districts to deliver excess water to out-of-district users. *See Yaden v. Gem Irr. Dist.,* 37 Idaho 300, 216 P. 250 (1923) (striking down an irrigation district's contract to deliver water to non-district users as ultra vires when the water was needed within the district); *Jensen*, 75 Idaho 133, 269 P.2d 755 (holding that an irrigation district could deliver seepage and wastewater to out-of-district users because such water was, by definition, not needed within the district); *Jones v. Big Lost River Irr. Dist.*, 93 Idaho 227, 459 P.2d 1009 (1969) (holding that a mutual canal company had no duty to deliver water to an outside user when the water was needed within the district despite prior service to that user). Here, nothing in Bliss's complaint suggests that MID delivered inadequate amounts of water to him because it overextended its resources elsewhere. As such, MID's duties as trustee under Idaho Code section 43-316 are not implicated by the allegations in Bliss's complaint.

We are also unpersuaded by Bliss's remaining arguments on this point. Bliss's citations to *Niday v. Baker*, 16 Idaho 73, 76–78, 101 P. 254, 255 (1909) and Article 15, section 4 of the Idaho Constitution are inapt to his circumstances. *Niday* stands for the proposition that once a water right owned by an irrigation district has attached to a water user's land, an irrigation district cannot refuse to deliver water to that user so long as the water user has paid his dues to the district. 16 Idaho at 76–78, 101 P. at 255. Nothing in *Niday* suggests that this duty is contractual or fiduciary in nature.

11

And while Bliss claims that parallels exist between this case and our decision in *Farber v. Idaho State Insurance Fund*, we disagree. 152 Idaho 495, 272 P.3d 467 (2012). As an initial matter, *Farber* is of only qualified relevance to this case because the ITCA was not at issue. Second, *Farber* involved an express contract between the State Insurance Fund and policyholders which was supplemented by statutory terms. *Id.* at 496, 272 P.3d at 468. At issue was whether the statutory term—a dividend requirement in Idaho Code section 72-215—triggered the five-year statute of limitations for contract actions or the three-year period for actions arising under statute. *Id.* at 497, 272 P.3d at 469. Because the sole purpose of section 72-215 was to "fill in the blanks" left open in the contract, we held that the statutory term was incorporated into the contract, and, as a result, the statute of limitations for contracts applied. *Id.* at 498, 272 P.3d at 470.

But here, there is no express contract that could be supplemented by statutory terms; there are *only* statutory duties. Without that express contract—and the concomitant voluntary waiver of sovereign immunity—the ITCA does not waive a state entity's immunity from suit unless the aggrieved party complies with the notice requirement of the ITCA. Because longstanding precedent holds that the statutory duties relevant to Bliss's cause of actions stated in Count 1 and 2 sound in tort, he needed to comply with the ITCA in order to obtain a waiver of sovereign immunity.

In summary, Count 1, Count 2, Count 3, and Count 5's IIED claim all sound in tort and were required to meet the requirements of the ITCA in order to pursue a viable claim. Accordingly, summary judgment on these counts was appropriate.

## B. Bliss failed to provide adequate notice under the Idaho Tort Claims Act for Count 1, Count 2, Count 3, and Count 5's claim for intentional infliction of emotional distress.

The district court determined that Bliss failed to provide adequate notice under the ITCA for Count 2 ("breach of fiduciary duty"), Count 3 ("trespass"), and part of Count 5 ("intentional infliction of emotional distress"). The district court also determined that Bliss could not succeed on Count 1 ("breach of contract") because the cause of action sounded in tort, not contract. Bliss argues that he complied with the "primary function" of the ITCA because MID had actual notice of his claims and he sent MID four written notices which, taken together, were sufficient to put MID on notice of Bliss's claims. For Bliss, this means that he complied with the "primary function"

12

of notice under the ITCA of putting MID on notice that it needed to preserve evidence and prepare a defense.

We agree with the district court that Bliss's ITCA Notice Letter was insufficient to provide MID notice of Bliss's claims for Count 2, Count 3, and Count 5's claim for intentional infliction of emotional distress. We also determine that Count 1 fails because the claim does not comply with the ITCA.

A prerequisite to bringing an ITCA claim is observing its time limits. *See* I.C. § 6-908 ("No claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by this act."). A claimant must first present and file a claim "with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later." I.C. § 6-906. A claim is "any written demand to recover money damages from a governmental entity or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee when acting within the course or scope of his employment." I.C. § 6-902.

Compliance with this notice requirement is mandatory and failure to observe it results in dismissal of the claim. *See Turner v. City of Lapwai*, 157 Idaho 659, 662, 339 P.3d 544, 547 (2014). The ITCA requires a claim to contain the following:

- an accurate description of "the conduct and circumstances which brought about the injury or damage";
- a description of "the injury or damage";
- a statement of "the time and place the injury or damage occurred";
- a statement of "the names of all persons involved, if known";
- "the amount of damages claimed"; and
- a statement of "the actual residence of the claimant at the time of presenting and filing the claim and for a period of six (6) months immediately prior to the time the claim arose."

I.C. § 6-907. However, small flaws in the claim are not necessarily fatal: "A claim filed under the provisions of this section shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact misled to its injury thereby." I.C. § 6-907.

13

We have explained that the purpose of the notice requirement is to

(1) save needless expense and litigation by providing an opportunity for amicable resolution of the differences between parties,

(2) allow authorities to conduct a full investigation into the cause of the injury in order to determine the extent of the state's liability, if any, and

(3) allow the State to prepare defenses.

*Mitchell v. Bingham Mem'l Hosp.*, 130 Idaho 420, 424, 942 P.2d 544, 548 (1997) (quoting *Pounds v. Denison,* 120 Idaho 425, 426–27, 816 P.2d 982, 983–84 (1991)).

As an initial matter, we disagree with MID's argument that Bliss's failure to deliver the Invoice Letter, the September Letter, and the November Letter directly to MID's secretary is a categorical deficiency for the claims that were not articulated in the ITCA Notice letter. *See CNW, LLC v. New Sweden Irr. Dist.*, 161 Idaho 89, 93, 383 P.3d 1259, 1263 (2016) (holding that a plaintiff satisfied ITCA's notice requirements by delivering notice to an irrigation district's attorney, who then delivered the notice to the district's secretary). Here, Bliss presented evidence that his letters were given to MID's attorney, and the letters discussed at the Board Meetings, where Ruth Bailes, MID's secretary, was present. Accordingly, Bliss produced evidence that his correspondence was filed "with the clerk or secretary of the political subdivision" I.C. § 6-906. Ultimately, however, this issue is not determinative because we find that the letters sent were insufficient to give adequate ITCA notice to MID.

Bliss's correspondence—even when viewed cumulatively—fail to provide adequate notice of Count 1, Count 2, Count 3, and the IIED claim in Count 5.

We first address Count 5's IIED claim because Bliss failed to appeal one of the bases for the district court's decision on that count. Specifically, Bliss failed to appeal the district court's ruling that he failed to provide sufficient ITCA notice of his IIED claim, choosing to only challenge the district court's determination that his IIED claim also failed on the merits. This Court has long held that "if an appellant fails to contest all of the grounds upon which a district court based its grant of summary judgment, the judgment must be affirmed." *AED, Inc. v. KDC Invs., LLC*, 155 Idaho 159, 164, 307 P.3d 176, 181 (2013).

Bliss argues that the district court never made a ruling on whether his IIED claim lacked sufficient ITCA notice. In support, he points this Court to a single sentence in the district court's decision. That sentence appears in a paragraph analyzing whether there was sufficient notice for Bliss's claim of malicious prosecution. The district court stated that the ITCA Notice Letter was

14

"sufficient to put MID on notice Count V of the complaint." But, recalling that Count V of Bliss's complaint articulated both a malicious prosecution claim and an IIED claim, the very next paragraph negates Bliss's argument. The court explained that the ITCA Notice Letter failed to "allege th[e] factual allegations set forth in the complaint as to the claims of . . . negligent or intentional infliction of emotional distress." What's more, the district court's conclusion in that section read: "[S]ummary judgment should be granted as to MID on the claims of . . . emotional distress for failure to comply with the notice requirements of the Idaho Tort Claim Act." We affirm the district court's award of summary judgment to MID on Count 5's IIED claim for failure to provide adequate ITCA notice.

Next we look to the letters preceding the ITCA Notice Letter (i.e. the Invoice Letter, the September Letter, and the November letter) to see if they put forth the facts underlying Counts 1, 2, and 3 sufficient to give MID notice of Bliss's claims. We find them wanting.

Nothing within the letters could give notice to MID that Bliss would claim that MID was failing to deliver adequate water to his property. The letters focused on noxious weed-control and flooding. Nothing in any of the correspondence could have alerted MID that Bliss would seek to hold it liable for failure to deliver adequate water for the crops on his land. While Bliss expressed this concern to Frank Hunt at their meeting, he failed to include any written notice whatsoever. As such, this complaint appears in nothing that could be considered a "claim" under the ITCA. We have explained that even if the state entity is aware of the underlying conduct or incident, actual notice is not enough—claimants must give written notice of their claim. *Blass v. Cty. of Twin Falls*, 132 Idaho 451, 453, 974 P.2d 503, 505 (1999) (discussing *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348 (1975)). Had Bliss included this claim in his letters, MID could have taken steps to investigate and remedy the problem before it became the subject of legal action.

Likewise, the letters make no mention of MID's alleged trespass on Bliss's land by constructing the embankment that allegedly damaged his fence. To be sure, the September and November Letters contain a lengthy discussion centering on MID's desire to build an access road along the lateral and its belief that Bliss built an unauthorized crossing over the lateral. However, the closest Bliss came to mentioning anything regarding the ditch's construction and its alleged damage to his fence was the statement that he wanted to be present if MID conducted maintenance on the canal, alluding "to damage [MID] ha[d] caused in the past to his irrigation equipment and his land." Nothing in this vague reference would alert MID that Bliss believed it was continuing

15

to trespass on his property. It would also stretch the bounds of reason to claim that Bliss would refer to his fence as "irrigation equipment."

Bliss's cause of action based on the flooding of his property ultimately fares no better. Arguably, Bliss's claim that MID's allegedly negligent maintenance of the ditch flooded his land and damaged his crop appears in the September Letter and the November Letter. In the September Letter, Bliss asserted that "just recently MID's lateral ditch overflowed onto [his] crops," but did not give an exact date or location. However, he did explain that the ditch rider was informed and "witnessed the water topping the bank." Bliss also alerted MID that he would be making a request for repairs, losses, and costs "in the near future." The strongest statement that could lead this letter to being read as an ITCA claim came after MID invited him to file a tort claim if he thought he experienced crop loss. But Bliss did not file a statutory tort claim.

Additionally, Bliss's actions subsequent to this exchange negate whatever notice he gave. Bliss did not file his complaint until more than a year after the September and November letters. In the interim, Bliss sent MID the ITCA Notice Letter which didn't even hint at a flooding claim. Under these circumstances, the reasonable inference the recipient of the ITCA Notice Letter would make is that the flooding claim had been abandoned after "all the information was gathered." Likewise, because the previous letters did not look or read like the ITCA Notice Letter, the reasonable inference is that the prior letters were not intended to constitute ITCA Notice. In other words, even though Bliss told MID that he would be pursing the flooding matter as a tort claim, his subsequent actions negated or supplanted whatever notice such statement would have provided. As such, the normal consequences of such notice—i.e. preserving evidence and preparing a defense—would not have come to fruition.

Bliss supplied a concise and clear ITCA notice that alerted MID that he would be pursuing a tort claim against it for malicious prosecution which did not mention any grievances previously discussed between the parties. The remainder of the counts does not meet the criteria for ITCA notice. Therefore, we affirm the district court's decision on these counts.

## C. The district did not err in determining that Bliss failed to produce evidence to support an element of his claim of malicious prosecution.

The district court awarded summary judgment in favor of MID on Bliss's claim of malicious prosecution on two alternate grounds. The court determined that Bliss could not make a prima facie showing because (1) he could not show that the criminal proceeding terminated in his

16

favor and (2) Bliss failed to present adequate evidence to show that MID acted with malice or criminal intent. Because we agree with the district court that Bliss did not present adequate evidence to show malice or criminal intent, we affirm on that basis and need not address the alternate ruling.

"Actions for malicious prosecution are not favored in law and, thus are limited by requiring the plaintiff to establish several elements." *Badell v. Beeks*, 115 Idaho 101, 102, 765 P.2d 126, 127 (1988) (citing *Luther v. First Bank of Troy*, 64 Idaho 416, 133 P.2d 717 (1943)). Those elements are:

> (1) That there was a prosecution;
>
> (2) That it terminated in favor of the plaintiff;
>
> (3) That the defendant was the prosecutor;
>
> (4) Malice;
>
> (5) Lack of probable cause; and
>
> (6) Damages sustained by the plaintiff.

*Id.*

In addition to showing malice as an element of his malicious-prosecution claim, Bliss is also required to show that MID acted with malice or criminal intent while acting within the scope of employment. I.C. § 6-904(3) ("A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which: . . . (3) Arises out of . . . malicious prosecution[.]").

At the summary judgment stage, MID carries the initial burden to show "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." I.R.C.P. 56. However, MID may satisfy this initial burden by "establishing the absence of sufficient evidence" supporting a material element of the non-movant's claim. *Holdaway v. Broulim's Supermarket*, 158 Idaho 606, 610, 349 P.3d 1197, 1201 (2015) (citing *Bromley v. Garey*, 132 Idaho 807, 810–11, 979 P.2d 1165, 1168–69 (1999)). The burden then "shifts to the non-moving party to establish a genuine issue of material fact." *Id.* at 610–11, 349 P.3d at 1201–02. To establish a genuine issue of material fact, the "non-moving party cannot merely rely upon its pleadings, but must produce affidavits, depositions, or other evidence establishing an issue of material fact." *Id.* at 611, 349 P.3d at 1202.

17

As Bliss would have borne the burden of proving the elements of his claim at trial, he "cannot rest on the pleadings but must show some evidence from which the court could reasonably infer the critical elements of his or her claims." *Miller v. Idaho State Patrol*, 150 Idaho 856, 870, 252 P.3d 1274, 1288 (2011) (citing *Anderson v. City of Pocatello*, 112 Idaho 176, 188, 731 P.2d 171, 183 (1986)).

The critical elements at issue are malice and criminal intent. In this context, malice refers to "the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, whether or not injury was intended." *Id.* (quoting *Beco Constr. Co. v. City of Idaho Falls*, 124 Idaho 859, 864, 865 P.2d 950, 955 (1993)). Criminal intent, on the other hand, is "the intentional commission of what the person knows to be a crime." *James v. City of Boise*, 160 Idaho 466, 484, 376 P.3d 33, 51 (2016).

Bliss's theory of malicious prosecution rests on the premise that Hunt (along with other MID employees) intentionally misled law enforcement on the basic facts of the incident in an effort to harass Bliss. Bliss does not dispute that he cut the lock and shut the check structure's gate. Rather, he asserts that he was given authority to cut the lock and close the gate. He argues that, because Hunt could authorize him to cut the lock, and because MID employees knew Hunt had given him the authority to cut the lock, they misinformed the police and, as a result, the prosecutor brought false charges. Thus, the statements provided to the Minidoka County Sheriff's Office are active misrepresentations and, thus, evidence supporting the critical elements of malice or criminal intent.

As evidence to support his theory, Bliss provided the district court with the five voluntary statements provided by MID's employees. Specifically, Bliss points to Frank Hunt's voluntary statement as evidence that the other statements were misrepresentations. We take a different view of these statements. In Hunt's statement to the Minidoka Sheriff's Office, he indicated his position as Chairman of MID's Board and explained MID's history with Bliss, his in-person conversation with Bliss the day of the incident, his phone-call conversation with Bliss that evening, and, specifically, his statement that it "sound[ed] like [Bliss] needed more water in the ditch." Bliss does not argue that this version of events is untrue. As such, MID, through Hunt and its employees, never made a material misrepresentation of the facts as they occurred. Rather, each employee gave a statement to the extent of their personal knowledge.

Bliss's argument that these statements are evidence of malice or criminal intent relies on two contentions: (1) that Hunt had the authority to allow him to cut the lock and close the headgate; and (2) that Hunt gave Bliss the authority to do so. However, neither contention is legally or factually supported.

Idaho Code section 43-304 demonstrates that Hunt lacked the authority to allow Bliss to cut the lock and close the headgate. That statute speaks to the power of *the Board*, not the chairperson, and only grants the Board the power to

> manage and conduct the business and affairs of the district, make and execute all necessary contracts, employ and appoint such agents, officers and employees as may be required and prescribe their duties, to establish equitable by-laws [bylaws], rules and regulations for the distribution and use of water among the owners of such land, as may be necessary and just to secure the just and proper distribution of the same . . .

I.C. § 43-304. Nothing in section 43-304 suggests that Hunt had the unilateral authority to delegate to a water user the responsibilities of the ditchrider and watermaster. In a similar vein, Bliss was charged with wrongful diversion of water under Idaho Code section 18-4304, which criminalizes diverting water without the consent of the *watermaster*. *See* I.C. 18-4304. Bliss produced no evidence suggesting that he had obtained consent from MID's watermaster to divert water by closing the check structure. As such, there were no materially false statements made to the Sheriff's office which affected the crime charged.

Likewise, the record contained ample evidence that MID water users would not have taken Hunt's statement as authority to do what Bliss did. For example, in Hunt's deposition, he explained that "I was a little bit irritated that he called me because I have—as chairman of the Board or Board members, we have no authority to go out and turn more water in. So when he's talking to me, he might as well be talking to a fence post about getting more water in there. I have no authority to do that, and he needs to talk to a ditch rider." Dan Davidson also voiced similar reasoning:

> I can't think of any other system in the 20 years that I've worked with water where the chairman of the Board, unless he's also the ditch rider and it's a ditch company that's maybe a couple hundred acres, would have the authority or anybody would think that they have the authority to go up and just take the water. Because if you do that, you're stealing somebody else's water . . . . In our annual newsletter it says if you want to call and order your water, you want to make changes to your water, you call your ditch rider . . . because that is the person who's responsible for moving water.

19

Bliss also makes an argument that he provided evidence that Bailes, MID's secretary, wrongfully distributed body-cam footage from a police officer's interview with him. We decline to consider this argument and evidence because he raises this argument for the first time on appeal. To combat MID's argument that he raises this argument for the first time on appeal, Bliss points out that he attached Bailes' deposition (in which Bliss's counsel questioned her about this topic) in support of his opposition to MID's motion. "[T]he trial court is not required to search the record looking for evidence that may create a genuine issue of material fact; the party opposing the summary judgment is required to bring that evidence to the court's attention." *Esser Elec. v. Lost River Ballistics Techs., Inc.*, 145 Idaho 912, 919, 188 P.3d 854, 861 (2008) (citing *Coeur d'Alene Mining Co. v. First Nat'l Bank of North Idaho*, 118 Idaho 812, 800 P.2d 1026 (1990)). While the deposition was attached to the memorandum in opposition to MID's motion for summary judgment, nothing in the memorandum itself hinted at the argument he makes now. Failure to present this argument to the trial court for consideration means we will decline to consider it on appeal. *See Valiant Idaho, LLC v. VP Inc.*, 164 Idaho 314, 327, 429 P.3d 855, 868 (2018).

In sum, Bliss produced no evidence supporting the critical elements of malice or criminal intent. Accordingly, the district court did not err in awarding summary judgment in favor of MID on the malicious prosecution claim found in Count 5 of the complaint.

## D. The district court did not err in dismissing Bliss's claim for declaratory relief for failure to show a justiciable controversy.

In Count 4, Bliss sought declarations that: (a) he is "entitled to receive enough water . . . to sufficiently water his crops"; (b) water "is deliverable pursuant to the times and schedules set forth by MID each water season"; (c) MID is "required by law to control the noxious weeds upon and within its canals, ditches, and surrounding banks where it utilizes its easement"; and (d) MID "is required to have all director meetings open to the public at large."

The district court ruled that Bliss wasn't entitled to declaratory relief for Count 4 because he lacked standing to bring his claims. For Counts 4(a) and (b), the district court noted that while there was some evidence that Bliss, at times, did not receive all the water to which he was entitled, the district court emphasized that he failed to allege an actual injury or present any evidence of an actual or threatened injury. For Count 4(c), the district court highlighted that both MID and Bliss have a statutory duty to control the weeds under Chapter 24, Title 22, and thus, a judicial declaration was not needed. Lastly, for Count 4(d), the district court determined that Bliss failed

to produce any evidence of an actual injury because he had not alleged or shown that he was excluded from a Board Meeting.

Bliss argues that the trial court erred in finding that there is no justiciable controversy for Bliss's claim of declaratory relief. He also argues that the district court erred in finding that statutory duties outlining the parties' respective duties to control noxious weeds negated the need for declaratory relief because there was substantial evidence of MID's neglect.

"Although the Declaratory Judgment Act, Idaho Code Title 10, chapter 12, bestows the authority to declare rights, status, or other legal relations, that authority is circumscribed by the rule that 'a declaratory judgment can only be rendered in a case where an actual or justiciable controversy exists.'" *Schneider v. Howe*, 142 Idaho 767, 772, 133 P.3d 1232, 1237 (2006) (quoting *Harris v. Cassia County*, 106 Idaho 513, 516, 681 P.2d 988, 991 (1984)). As the jurisdiction is limited to cases "where an actual or justiciable controversy exists," courts are precluded "from deciding cases which are purely hypothetical or advisory." *Bettwieser v. New York Irr. Dist.*, 154 Idaho 317, 326, 297 P.3d 1134, 1143 (2013). A justiciable controversy should be "[d]istinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot . . ." *Id.* (quoting *Davidson v. Wright*, 143 Idaho 616, 620, 151 P.3d 812, 816 (2006)).

> The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.*

Here, we agree with the district court that Bliss failed to produce evidence of an actual injury for Count 4(a) and 4(b). The district court is correct that Bliss produced some evidence that he, at times, did not receive adequate water. However, on appeal, Bliss fails to point to anything in the record suggesting that crops were harmed by the allegedly inconsistent water delivery. Even if his lease gave him an interest in the crops grown on his land, he did not produce any evidence that crops were affected. As such, he has failed to show an injury as to Count 4(a) and 4(b).

For Count 4(c), the district court determined that no justiciable controversy required a declaration on the obligation of noxious-weed abatement because the Idaho Code provided that both MID and Bliss have an obligation to control noxious weeds on the property they have legal title to or have a right to exclude others from possession. "It shall be the duty and responsibility of

21

all landowners to control noxious weeds on their land and property, in accordance with this chapter and with rules promulgated by the director." I.C. § 22-2407(1). A "landowner" is defined as

> (a) The person who holds legal title to the land, except that portion for which another person has the right to exclude others from possession of the parcel; or

> (b) A person with an interest in a parcel of land such that the person has the right to exclude others from possession of the parcel.

I.C. § 22-2402(15). We find no error in this decision. Idaho Code sections 22-2407(1) to 2408 explain the responsibilities of the parties as concerns their respective interests in the properties. To the extent Bliss seeks to challenge those interests, his claim would be better suited in a quiet-title action.

Count 4(d) is also settled by the Idaho Code. Specifically, irrigation districts are required by law to hold all board meetings open to the public. See I.C. § 43-303 ("All meetings of the board must be public . . . ."). As such, there is no judicial controversy as to the rights and duties regarding whether board meetings must be public. We thus find no error in the district court's decision on this count.

**E. Whether either party is entitled to attorneys fees on appeal.**

Bliss seeks attorneys fees under Idaho Code section 12-117(1) and 12-121. However, he provides no argument to explain why this Court should award him attorneys fees under these sections. Even if he were the prevailing party, we would decline to entertain the request. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court.")

MID argues that it is entitled to attorneys fees and costs under Idaho Code section 12-117, 12-121, and 6-918A, because Bliss brought the original action, and this appeal, frivolously. It claims that the underlying action did not have an adequate ITCA notice. MID argues that Bliss acted with bad faith because there was no evidentiary basis for his appeal.

Idaho Code section 6-918A allows the Court to award "appropriate and reasonable attorney fees" to the "claimant, the governmental entity or the employee of such governmental entity, as costs, in actions under [the ITCA], upon petition therefor and a showing, by clear and convincing evidence, that the party against whom or which such award is sought was guilty of bad faith in the commencement, conduct, maintenance or defense of the action." When implicated, section 6-18A

is the exclusive means by which a party may recover attorneys fees for causes of action brought under the Idaho Tort Claim Act. *Block v. City of Lewiston*, 156 Idaho 484, 490, 328 P.3d 464, 470 (2014). Here, there is not clear and convincing evidence that either party commenced, conducted, maintained or defended the action in bad faith. *See id.* ("Bad faith means dishonesty in belief or purpose."). Rather, they did so upon a reasonable view of the law and facts. As such, we decline to award attorneys fees under section 6-918A for the claims implicating the ITCA.

Both sections 12–117 and 12–121 "permit the award of attorney's fees to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Nation v. State, Dep't of Correction*, 144 Idaho 177, 194, 158 P.3d 953, 970 (2007). Here, the only issue that does not implicate the ITCA are the claims seeking a declaratory judgment. On that issue, MID is the prevailing party. However, there is no indication that Bliss pursued that issue unreasonably or without foundation. As such, we decline to award attorneys fees.

## V. CONCLUSION

For the reasons above, we determine the district court properly awarded summary judgment in favor of MID. We affirm the judgment and award costs on appeal to MID.

Justices BEVAN, STEGNER, MOELLER, and Justice pro tem MELANSON **CONCUR**.